**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| CATHI CLEVEN and | § | |
| TARA CLEVEN | § | |
| for themselves and all others | § | |
| similarly situated, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| MID-AMERICA APARTMENT | § | |
| COMMUNITIES, INC, as General Partner | § | CIVIL ACTION NO.  1:16-CV-00820-RP |
| of MID-AMERICA APARTMENTS, LP, | § | |
| MID-AMERICA APARTMENTS, LP, | § | |
| Individually and as General Partner | § | |
| of CMS/COLONIAL MULTIFAMILY | § | |
| CANYON CREEK JV LP, and | § | |
| CMS/COLONIAL MULTIFAMILY | § | |
| CANYON CREEK JV LP, | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT WITH JURY DEMAND

Cathi Cleven, Tara Cleven (the "Clevens"), Areli Arellano ("Arellano") and Joe L. Martinez ("Martinez") (collectively "Plaintiffs"), for themselves and all others similarly situated, file this Second Amended Complaint with Jury Demand pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) complaining of Defendants Mid-America Apartment Communities, Inc., as general partner of Mid-America Apartments, LP, Mid-America Apartments, L.P., individually, d/b/a Colonial Grand at Double Creek and as general partner of CMS/Colonial Multifamily Canyon Creek JV LP, and CMS/Colonial Multifamily Canyon Creek JV LP (collectively "Defendants" or "MAA") as follows:

## I.  PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs are, and were during all times relevant to this case, individuals residing in Travis County, Texas, and for diversity purposes, all of them are citizens of Texas.

2.      Defendant Mid-America Apartment Communities, Inc. ("MAA Inc.") is and was during all times relevant to this case a Tennessee corporation with its principal place of business in Memphis, Tennessee, and for diversity purposes, is a citizen of Tennessee.  MAA Inc. has entered an appearance through its counsel of record.

3.      Mid-America Apartments, L.P. ("MAA LP"), individually, d/b/a CG at Double Creek and as general partner of CMS/LP is and was during all times relevant to this case a Tennessee limited partnership with its principal place of business in Memphis, Tennessee.  MAA has entered an appearance through its counsel of record.

4.      CMS/Colonial Multifamily Canyon Creek JV, LP ("CMS/LP") is and was during all times relevant to this case a Delaware limited partnership with its principal place of business in Memphis, Tennessee. CMS/LP has entered an appearance through its counsel of record.

5.      MAA Inc. is and was during all times relevant to this case the general partner of MAA LP. *See* **Ex. A**, Application for Registration of a Foreign Limited Partnership filed with the Texas Secretary of State; **Ex B**, Periodic Report filed by MAA LP with the Texas Secretary of State listing MAA Inc. as its general partner. Because both CMS/LP and MAA LP are limited partnerships, MAA Inc. is the operating general partner of both limited partnerships.

6.      MAA LP is the general partner of CMS/LP by way of merger. The original general partner of CMS/LP was CRLP-CMS L.L.C., a Delaware limited liability company. *See* **Ex. C** (Registration of Foreign Limited Partnership CMS/LP filed with the Texas Secretary of State on December 21, 2007). As part of the 2013 Colonial/MAA merger, CRLP-CMS L.L.C. was

merged into Colonial Realty Limited Partnership. *See* **Ex. D** (Termination of Registration of the original general partner of CMS/LP (CRLP-CMS L.L.C.), and notice of merger of CRLP-CMS L.L.C. into Colonial Realty Limited Partnership filed with the Texas Secretary of State dated September 20, 2013). Colonial Realty Limited Partnership was then merged into MAA LP as part of the merger. *See* **Ex. E** (Termination of Registration of Colonial Realty Limited Partnership, and notice of merger of Colonial Realty Limited Partnership into Mid-America Apartments, LP effective as of March 31, 2015).[1] As a result of these mergers of entities, MAA LP is the general partner of CMS/LP. MAA Inc. is the general partner of MAA LP and conducts all business of both MAA LP and CMS/LP.

7.      Colonial Grand at Canyon Creek ("CG at Canyon Creek") is an assumed name for CMS/LP and its general partner, MAA LP. This fact is confirmed by an assumed name certificate MAA prepared and recorded in the public deed records of Travis County, Texas on August 22, 2014 attached as **Ex. F**.  In the recorded assumed name certificate, CMS/LP and MAA LP are both listed as "owners" of CG at Canyon Creek.[2] As the general partner of CMS/LP and as a stated owner of the property, MAA LP possesses all the rights, duties, obligations and liabilities of an owner, just as CMS/LP.  Similarly, because MAA LP is itself a limited partnership, it acts by and through its general partner, MAA Inc.  For this reason, MAA Inc. possesses all the rights, duties, obligations and liabilities of an owner of CG at Canyon Creek, just as CMS/LP and MAA LP.  Defendants are jointly and severally liable for the statutory violations asserted in this case, as owners and landlords of CG at Canyon Creek.

---

[1] Defendants MAA LP and MAA Inc. filed a motion to dismiss Plaintiffs' Original Complaint (ECF 8) in which they omitted these material facts and made representations to the Court that are demonstrably false. This amended pleading, including the attached exhibits, moots the motion to dismiss.

[2] This is consistent with representations by MAA LP and MAA Inc. in their 10K reports filed with the SEC confirming that MAA "owned" CG at Canyon Creek, CG at Double Creek and other MAA apartment properties in Texas as of December 31, 2015. *See, e.g.,* **Ex. J** (MAA 2015 SEC 10K), at 1, 25, and 29.

8.     Colonial Grand at Double Creek ("CG at Double Creek") is an assumed name for MAA LP.  *See* **Ex. N** (assumed name certificate recorded in the public deed records of Travis County, Texas, dated August 22, 2014).   On the recorded assumed name certificate, Colonial Realty Limited Partnership and MAA LP are <u>both</u> listed as "owners" of CG at Double Creek.  Colonial Realty Limited Partnership was merged into and became MAA LP as part of the Colonial/MAA merger. *See* **Ex. E** (Termination of Registration of Colonial Realty Limited Partnership, and notice of merger of Colonial Realty Limited Partnership into Mid-America Apartments, LP effective as of March 31, 2015).  As a result of this merger of entities, MAA LP is the successor and surviving owner of CG at Double Creek. Also, MAA LP, as the successor in interest to Colonial Realty Limited Partnership by way of merger, is the legal titleholder of CG at Double Creek. *See* **Ex. O** (recorded warranty deed).

9.     MAA LP and MAA Inc., d/b/a CG at Double Creek and d/b/a other MAA-branded apartment properties, or as general partners of other affiliated MAA entities, are landlords and owners of other MAA apartment properties in Texas besides CG at Canyon Creek and CG at Double Creek.

10.    The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(d) (the Class Action Fairness Act or "CAFA") because at least one Defendant is a citizen of a state different from Plaintiffs, the amount in controversy exceeds $5 million exclusive of interest and costs, and there are more than 100 members of the class.  The Court also has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(2) because Plaintiffs and Defendants are citizens of different U.S. states, resulting in complete diversity of citizenship, and the amount in controversy exceeds $75,000.00, excluding only interest and costs.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b).  Plaintiffs' claims arose in the Western District of Texas, Austin Division.

12.     Plaintiffs and the putative class members (the "Class" as defined below) have standing to bring the claims in this complaint under TEX. PROP. CODE § 92.019 because they are, and were during the Class Period, residential tenants in Texas under written form leases with Defendants.

## II.  INTRODUCTION AND BACKGROUND

13.     This case seeks to certify a class of current and former residential tenants at apartment communities in Texas where Defendants (Memphis, Tennessee based business entities) are owners and landlords.   Plaintiffs seek to recover statutory remedies for themselves and the Class for unreasonable and excessive rent late fees assessed during the Class Period under TEX. PROP. CODE § 92.019, which was enacted by the Legislature for the stated purpose of protecting residential tenants like those in the Class from "excessive fees and unwarranted penalties."[3]

**A.**     **Section 92.019 imposes limits on landlord rent late fees**

14.     The Texas Property Code places limits on late fees a landlord can assess tenants.  Under TEX. PROP. CODE § 92.019 ("Section 92.019") a landlord may not charge a tenant a late fee for failing to pay rent unless:

(a)  notice of the fee is included in a written lease;

(b) **the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent**; and

(c)  the rent has remained unpaid one full day after the date the rent was originally due.[4]

15.     A late fee under this section may include an initial fee and a daily fee for each day the

---

[3] The legislative history of H.B. 3101 says: "Hardworking Texans deserve affordable housing without landlords ... charging excessive fees, or imposing unwarranted penalties that could take money needed for food, education, healthcare, and retirement...."  http://www.lrl.state.tx.us/scanned/hroBillAnalyses/80-0/HB3101.PDF
[4] Section 92.019(a)(1)-(3) (emphasis added).

rent continues to remain unpaid.[5] **"A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees."[6]**

15.     "A provision of a lease that purports to waive a right or exempt a party from a liability or duty under this section is void."[7] The statute is specifically intended to cover routine situations, as here,  where a tenant pays her rent but does so a few days late and the landlord assesses and collects an excessive late rent as a result. It "does not affect the landlord's right to terminate the lease or take other action permitted by the lease or other law, and payment of the fee, charge, or other sum of money by a tenant does not waive the right or remedies provided by the property code."[8]

**B.     Texas landlords have increased rent late fees to all-time record levels**

16.     Over the last five years, as the economy in Texas has boomed, particularly in the Greater Austin area, landlords have increased their late fees to unprecedented levels as they try to wring every last dime of revenue from tenants. First-day-late fees have increased from $50.00 to $75.00 and now some landlords assess a whopping $100.00 or more for the first day rent is late (usually the third or fourth day of the month).  In addition to the first-day-late charge, additional late fees typically are added at the rate of $10.00 - $15.00 per day until paid, usually with a cap per month in the $215.00 - $310.00 range. Defendants' late fee scheme is typical of this aggressive policy.

17.     On information and belief, Defendants changed their rent late fee scheme in early to mid-2014 (shortly after the Colonial/MAA merger), and began charging tenants a minimum late fee

---

[5] *Id.* at (b).
[6] *Id.* at (c) (emphasis added).
[7] *Id.* at (d).
[8] *Id.* at (e).

of $75.00 or more the first day rent is late (usually the third day of the month), plus $15.00 per day thereafter until paid.  Plaintiffs' leases are typical in this regard.  Plaintiffs' TAA lease form caps late fees at $285.00 per month.  Thus, a tenant paying rent of $1,000.00 per month, who pays late and incurs the maximum late fee, is charged interest of 7.5% for the first late day (over 2,700% annualized), and over 1% - 1.5% per day thereafter (365% - 547.5% annualized). These late charges bear no rational relationship to any actual harm incurred by landlords, and are nothing more than an added profit-center for large multifamily landlords like Defendants.

18.      If a tenant pays rent a few days late, the only likely harm to the landlord is the loss of the use of such money for a few days, *i.e.*, "time" or interest.[9]  On information and belief, the late fees assessed by MAA have come to represent their largest source of ancillary (non-rent) income. Texas law prohibits landlords from charging rent late fees to increase their revenue. Instead, late fees must only compensate landlords for their estimated damages when tenants pay their rent but do so a few days late, a situation where little if any harm occurs. MAA's aggressive revenue-driven rent late fee scheme cannot be defended on any rational basis as a reasonable estimate of any alleged harm suffered.[10]

19.      Plaintiffs bring this action for themselves and all others similarly situated to recover relief specified under the property code.

---

[9] Defendants use automated computer systems to track tenants who pay rent late. Little or no labor is involved in the process.
[10] TEX. PROP. CODE Section 92.019(a).  MAA and other large apartment landlords have continued to push the limits on rent late fees despite a stern warning by the Texas Apartment Association ("TAA") in its legal handbook (a/k/a "Redbook"), written by experienced lawyers and provided to members like MAA that cautions landlords that rent late fees can be struck down by a court for being unconscionable and constituting a penalty and "there is a fine line between unlawful penalites and liquidated damages." *See* **Ex. I**.  Despite the warning, MAA and other landlords in Texas have gotten more and more aggressive with their rent late fee schemes.

## III.    FACTUAL ALLEGATIONS

**A.     MAA Owned and Managed Apartment Communities in Texas**

20.     During the relevant time period, MAA is believed to be, or have been, an owner or landlord of over 19,000 dwelling units in approximately 62 apartment communities in Texas.

21.     In Austin, MAA is believed to be an owner and landlord of 5,670 residential dwelling units in the following 18 properties and possibly others:

- Colonial Grand at Canyon Pointe f/k/a Colonial Grand at Canyon Ranch f/k/a Escalon at Canyon Creek;
- Colonial Grand at Ashton Oaks;
- Colonial Grand at Canyon Creek;
- Balcones Woods;
- Colonial Grand at Double Creek;
- Colonial Grand at Onion Creek;
- Colonial Grand at Round Rock;
- Colonial Grand at Silverado;
- Colonial Grand at Silverado Reserve;
- Colonial Grand at Wells Branch;
- Colonial Village at Quarry Oaks;
- Colonial Village at Sierra Vista;
- Grand Reserve at Sunset Valley;
- Legacy at Western Oaks;
- Silverado at Brushy Creek;
- Stassney Woods;
- Travis Station; and
- The Woods on Barton Skyway.

22.     In the Dallas/Fort Worth Metroplex, MAA is believed to be the owner and landlord of 10,138 dwelling units in the following 31 properties and possibly others:

- Legends at Lowes Farm;
- Bella Casita;
- Belterra;
- Boulder Ridge;
- Colonial Grand at Bear Creek;
- Colonial Grand at Fairview;
- Colonial Grand at Hebron;
- Colonial Grand at Valley Ranch;

- Colonial Reserve at Frisco Bridges;
- Colonial Reserve at Las Colinas;
- Colonial Village at Grapevine;
- Colonial Village at Main Park;
- Colonial Village at North Arlington;
- Colonial Village at Oak Bend;
- Colonial Village at Shoal Creek;
- Colonial Village at Vista Ridge;
- Colonial Village at Willow Creek;
- Copper Ridge;
- Courtyards at Campbell;
- Deer Run;
- Grand Courtyards;
- Highwood;
- Lane at Towne Crossing;
- La Valencia at Starwood;
- Los Rios;
- Colonial Reserve at Medical District;
- Northwood Place;
- Remington Hills at Las Colinas;
- Times Square at Craig Ranch;
- The Venue at Stonebridge Ranch; and
- Watermark.

23.    In the Greater Houston area, MAA is believed to be the owner and landlord of 2,641

dwelling units in the following 10 properties and possibly others:

- Cascade at Fall Creek;
- Cypresswood Court;
- Grand Cypress;
- Green Tree Place;
- Greenwood Forest;
- Legacy Pines;
- Park Place Houston;
- Ranchstone;
- Reserve at Woodwind Lakes; and
- Villages of Kirkwood.

24.    In San Antonio, MAA is believed to be the owner and landlord of 1,176 dwelling units in

the following three properties and possibly others:

- Alamo Ranch;
- Haven at Blanco; and
- Stone Ranch at Westover Hills.

25.     MAA has been and continues to be an owner and landlord of each of its apartment houses in Texas during all or at least part of the Class Period.  MAA's senior and executive management are directly involved in adopting and implementing MAA's rent late fee scheme, supporting and reviewing property management policies and practices such that MAA maintains complete control over the landlord function of its Texas apartment communities and directs the conduct of its onsite employees.  MAA used its computerized property management system to charge and collect from Plaintiffs and other class members excessive and impermissible rent late fees in violation of Section 92.019.  Thus, MAA's uniform conduct at issue in this case affects both Plaintiffs and the putative class.

**B.**     **Plaintiffs**

26.     The Clevens are residential tenants at CG at Canyon Creek, one of MAA's apartment complexes in Texas. CG at Canyon Creek is located at 9501 North FM 620, Austin, Texas 78726.

27.     On or about July 30, 2014, the Clevens jointly signed a one-year lease with CG at Canyon Creek for an apartment unit for a term from September 28, 2014 through September 27, 2015 (the "Cleven Lease"). *See* **Ex. G.** CMS/LP is listed as "owner" under the Cleven Lease.[11] Plaintiffs previously had signed other leases as tenants at CG at Canyon Creek as well.  In or about late July 2015, the Clevens jointly signed a more recent one-year lease with CG at Canyon Creek for an additional one-year term from September 28, 2015 through September 27, 2016.

---

[11] One or more of the addenda and other documents incorporated into the lease are on "MAA" forms and the lease refers to various "MAA" fees.

28.      Plaintiffs Arellano and Martinez are residential tenants at CG at Double Creek, one of MAA's apartment complexes in Texas. CG at Double Creek is located at 11001 S 1st Street, Austin, Texas 78748.

29.      On or about June 15, 2016 Arellano and Martinez jointly signed a one-year lease with CG at Double Creek for an apartment unit for a term from July 12, 2016 through July 11, 2017 (the "Arellano/Martinez Lease"). *See* **Ex. L.** MAA LP is listed as "owner" under the Arellano/Martinez Lease.  Arellano and Martinez previously had signed another lease as tenants at CG at Double Creek as well.

30.      Per Plaintiffs' Leases, ¶ 6 (**Ex. G** and **Ex. L**), Plaintiffs' rent was due on or before the dates specified, "without demand." The Leases further provide:

> **If you don't pay all rent on or before the 3rd day of the month, you'll pay an initial late charge of $75.00, plus a daily late charge of [$10.00 or $15.00] per day after that until the amount due is paid in full. Daily late charges cannot exceed 15 days for any single month's rent. We won't impose late charges until at least the third day of the month.**

Paragraph 32 or 32.5 of the Lease form further provides:

> [L[ate charges are liquidated damages and a reasonable estimate of such damages for **our time, inconvenience, and overhead associated with collecting late rent** (but are not for attorney's fees and litigation costs).

31.      Through an oversight, the Clevens paid their rent one day late, on May 4, 2015. Similarly, Plaintiffs Arellano and Martinez paid their rent three days late on October 6, 2016.

32.      MAA assessed the Clevens a rent late fee of $75.00 for paying their rent one day late. They paid all balances due, including the $75.00 rent late fee, on May 4, 2015.  MAA accepted the payment, retained it, and never credited or refunded it. The relevant portion of the Clevens' electronic tenant ledger on "MAA" letterhead is attached. *See* **Ex. H**.

33.     MAA charged the Clevens another rent late fee of $120.00 in July 2015, comprised of an initial late fee of $75.00 and three additional daily fees of $15.00 each.   MAA later waived $75.00 of the rent late fee. The Clevens paid the remaining $45.00 of the rent late fee, which was never credited or refunded. *See* **Ex. H**.

34.     MAA assessed Arellano and Martinez a rent late fee of $105.00 for paying their rent three days late. They paid all balances due, including the $105.00 rent late fee.   MAA accepted the payment, retained it, and never credited or refunded it. The relevant portion of Arellano's and Martinez's electronic ledger on "MAA" letterhead is attached. *See* **Ex. M**.

35.     Texas apartment landlords are prohibited from charging their tenants late fees on rent unless those fees are "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent."[12] In other words, a landlord is prohibited from instituting a punitive late fee schedule that serves as a penalty or revenue-generating scheme.   Rent late fees must be limited to a reasonable estimate of the actual harm to the landlord caused by tenants who pay their rent a few days late -- in this case, one to ten   days late.   MAA's lease form reaffirms this limitation by expressly limiting late fees to "time, overhead and inconvenience."

36.     The only damage suffered by MAA as a result of tenants paying rent one to ten days late is, at most, the loss of use of those unpaid amounts for a few days ("time"), and possibly the negligible administrative cost ("overhead") of sending late-paying tenants an automated form notice (which did not happen here).   "Inconvenience" is not a proper element of damage under

---

[12] Tex. Prop. Code Section 92.019(a)(2).  In a previous and related case asserting class claims identical to the Class claims in this case, Judge Robert L. Pitman issued the attached order[12] denying MAA's Rule 12(b)(6) motion to dismiss claims under Section 92.019 of the Texas Property Code made by another member of this putative class. *See* **Ex. K,**  Order by Judge Robert L. Pitman in a recent related case involving rent late fee claims under Section 92.019 identical to the Class claims in this case.

contract law; it is part of life for everyone (including MAA).

37.    In the case of Plaintiffs, MAA's damages, if any, amounted to a few dollars at most; and certainly not $75.00.[13]  Calculated as interest, MAA's standard late fee formula on past due rent results in many tenants being assessed a penalty of 7.5% or more of a month's rent the first day rent is late and an additional 1.0% or 1.5% (or more) per day thereafter in many instances. Such an amount is inherently unreasonable, unconscionable, and not tied to any rational measurement or estimation of MAA's actual damages caused by a tenant paying rent a few days late.

38.    On information and belief, MAA carefully tracks rent fees at each of its properties, even making budget projections of how much of this revenue it expects its property management teams to collect monthly and annually (and rewarding those employees for meeting or exceeding projections); yet, it makes no effort to use its vast collection of data to determine its estimated damages when tenants pay their rent a few days late. This reaffirms that MAA views rent late fees as nothing more than extra revenue (believed to total several million dollars every year, just in Texas).

39.    MAA uses a standardized Texas Apartment Association ("TAA") form lease (as most Texas landlords also use).  The lease form leaves blanks for the rent late fee amounts, leaving the decision of how much to charge tenants to owners and landlords. TAA, however, warns landlords of the peril associated with rent late fees and includes cautionary language in its handbook for landlord members warning them that excessive late fees expose landlords to liability under Section 92.019, among other potential claims.[14]  Thus, MAA was warned and failed to heed that warning regarding late fees.

---

[13]  Paragraph 32 of MAA's form lease specifies that "all unpaid amounts ... bear 18% interest per year ... compounded annually." Using MAA's interest rate, the interest on Plaintiffs' rent of $1,175.00 paid on the fourth day of the month amounts to $2.32, a far cry from the $75.00 late fee assessed and collected.

[14]  A copy of this page of the 2015 edition of the TAA handbook for landlords ("Redbook") is attached. *See* **Ex. I**.

C.     **MAA LP and MAA Inc. stand in the same shoes as CMS/LP as landlords and owners with respect to the claims of Plaintiffs and the Class**

37.     CMS/LP is a limited partnership. Originally it was an affiliated entity of Colonial Property Trust. The original general partner of CMS/LP was CRLP-CMS L.L.C., a Delaware limited liability company. *See* **Ex. C**. In 2013, Colonial Property Trust and its affiliated entities were merged into Mid-America Apartments, LP. As part of the merger transaction, CRLP-CMS L.L.C. was merged into Colonial Realty Limited Partnership on September 20, 2013. *See* **Ex. D**. Colonial Realty Limited Partnership was then merged into Mid-America Apartments, LP. effective as of March 31, 2015. *See* **Ex. E**.  By virtue of these merger transactions, MAA LP became the general partner of CMS/LP. This is consistent with the assumed name certificate filed by MAA on August 22, 2014 listing CMS/LP and MAA LP as "owners" of CG at Canyon Creek. **Ex. F**. Under Texas and Tennessee law, a general partner of a limited partnership has all the rights, duties, obligations and liabilities of a partner in a general partnership, including the right to sue and be sued in its own name for acts and omissions of the limited partnership.[15] Likewise, the general partner of a limited partnership is jointly and severally liable for all acts and omissions of the limited partnership. The Clevens therefore have the right to sue and have properly sued (a) CMS/LP, (b) the general partner of that limited partnership (MAA LP), and, because MAA LP itself is a limited partnership acting through its general partner, (c) the general partner of MAA LP (MAA Inc.) for the statutory violations asserted in this case.

38.     As stated above, Colonial Property Trust, and Colonial Realty Limited Partnership, and their subsidiaries and affiliates, including, CRLP-CMS L.L.C. and CMS/LP, merged into MAA

---

[15]*See* TEX. BUS. ORG. CODE ANN.. § 153.152(b) (West 2016)("Except as provided by this chapter or the other limited partnership provisions, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to a person other than the partnership and the other partners."); Tennessee Code Annotated § 61–1–306(a) ("All partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law.")

LP under a merger plan agreement dated June 3, 2013 that closed on or about October 1, 2013. CG at Canyon Creek is a Colonial "legacy" apartment property acquired by and merged into MAA as part of the merger. MAA LP and MAA Inc. are the surviving ownership entities, general partners and operating/management entities under the merger with regard to all of the Colonial legacy properties. As a result, they are landlords, owners or purported owners of all Colonial legacy apartment properties in Texas during the class period. Also, MAA LP and MAA Inc. are the landlords, owners and purported owners of all MAA legacy apartment properties in Texas during the class period too.[16] MAA LP has filed numerous assumed name certificates in several Texas counties and with the Secretary of State representing that it owns both Colonial legacy apartment properties and MAA legacy apartment properties in Texas, including the apartment properties listed in paragraphs 20 – 24 (and possibly others as well). Any after-the-fact attempt by MAA to conceal this fact from Plaintiffs and the Court, in an effort to diminish MAA's role as a landlord, owner and purported owner, is futile and has no impact on Plaintiffs' claims or those of the putative class against Defendants.

39.     CMS/LP, a shell entity owned and controlled by MAA LP/MAA Inc. as a result of the merger, is the legal titleholder of CG at Canyon Creek. Its general partner is MAA LP (also a limited partnership). MAA Inc. is the general partner of MAA LP. All three entities possess all the rights, duties, obligations and liabilities of a landlord with respect to Plaintiffs and the Class, and all three are jointly and severally liable to the Clevens and the Class for all violations of Section 92.019 of the Texas Property Code with regard to CG at Canyon Creek. With regard to other MAA apartment properties in Texas owned or purportedly owned by MAA LP and MAA Inc. (like CG at Double Creek), or where they are general partners of other limited partnerships

---

[16] An MAA legacy apartment property refers to apartment properties in Texas owned by MAA and its subsidiaries and affiliates before the Colonial/MAA merger.

that are owners or purported owners, MAA LP and MAA Inc. likewise are jointly and severally liable to the Class for all violations of Section 92.019 of the Texas Property Code

40.     The Texas Property Code governs landlord-tenant relationships. Section 92.001(2) of the Texas Property Code defines the term "landlord" as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." TEX. PROP. CODE § 92.001(2). Another section of the Texas Property Code that applies to landlords and tenants defines "landlord" to include both a "managing company" and a "managing agent."  *See* TEX. PROP. CODE § 92.151(7) ("'Landlord' means a ... management company, or managing agent, including an on-site manager").[17] Still another section of the property code defines the term landlord to include the property manager. *See* TEX. PROP. CODE. § 94.001 ("landlord" means "the owner or manager of a manufactured home community and includes an employee or agent of the landlord") (emphasis added). This shows the Legislature did not take a narrow or restrictive view of the term. Regardless of how the term "landlord" is defined or construed, here it does not matter because Defendants are jointly and severally liable to Plaintiffs and the Class as landlords and owners for the reasons explained in paragraph 37 - 39 above.

## D.     The Class and the Class Period

41.     The remaining members of the Class besides Plaintiffs, as defined below, are current or former residential tenants of MAA properties in Texas during the Class Period. These MAA properties are located in the Austin, Dallas/Fort Worth, Houston, and San Antonio metropolitan areas.  Because MAA uses a centralized system and policies to bill and collect rent late fees from

---

[17] This subsection of the Property Code expressly applies to apartments.  TEX. PROP. CODE § 92.152(b)(4) ("a dwelling to which this subchapter applies includes: ... (4) a living unit in an apartment ...").

its residential tenants in Texas, it is likely that class members have suffered the same or similar harm as Plaintiffs in the form of unreasonable and excessive rent late fees.

## IV. CLASS ACTION ALLEGATIONS

42.     As set forth below, the proposed Class satisfies the requirements for a class action.

43.     Plaintiffs bring the claims for relief alleged in this complaint pursuant to FED. R. CIV. P. 23 on behalf of themselves and a class defined as follows (the "Class"):

a.     The Class consists of (i) all persons who were residential tenants of apartment properties in the State of Texas under written leases where MAA served as an owner or landlord, and (ii) were assessed late fees on past due rent paid at least one day late and not more than ten days late during the Class Period.

b.     The "Class Period" means the period of time commencing four years prior to the date this case was filed and continuing to the date of judgment or as otherwise defined by the Court.

c.     The Class excludes the following persons:

(i)     the judge(s) assigned to this case and his or her staff;
(ii)    governmental entities;
(iii)   MAA and its affiliates;
(iv)    persons adjudged to be bankrupt;
(v)     persons who have previously released MAA of the claims raised by this case; and
(vi)    persons who abandoned their apartment units without paying rent or who were evicted by MAA for nonpayment of rent.

44.     Plaintiffs are members of the Class they seek to represent, as detailed in the factual background and the claims for relief section of this complaint.  The averments of fact and questions of law are common to the Class.

45.     The Class is believed to include thousands of members.  The Class is so numerous and spread out across the State of Texas that joinder of all members is impracticable.

46.     This action is governed by Section 92.019.  The leases in question are common,

standardized, and consistent among the Class. The only variances (if any) being minor and irrelevant.

47.     The averments of fact and questions of law common to the members of the Class predominate over any question affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  A class action is the superior way of resolving the claims raised in this case because:

   a.     The questions of law and fact are so uniform across the Class there is no reason why individual Class members would want to control the prosecution of their own actions at their own expense;

   b.     The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

   c.     The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every Class member and not just those who can afford to bring their own actions; and

   d.     MAA had actual knowledge of applicable Texas law yet acted deliberately and intentionally in charging its tenants prohibited fees and surcharges to likely add millions of dollars to its bottom line on the backs of its tenants.  Many, if not all, of the Class members may never discover MAA's wrongful actions.  Thus, in the absence of a class action, MAA likely will be unjustly enriched by millions of dollars to the detriment of unknowing Class members.

48.     MAA engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members.  The same statutory violations and breach of contract claims are involved.  Individual questions, if any, pale by comparison to the numerous common questions that predominate.

49.     The injuries sustained by Class members flow, in each instance, from a common nucleus of operative facts.  In each case, MAA charged Class members excessive and prohibited late fees for rent in violation of Texas law.

50.     Class members have been damaged by MAA's misconduct.  Class members have been charged and have paid excessive amounts to MAA, allowing MAA to impermissibly profit by adding excessive and impermissible late fees for rent.

51.     Plaintiffs' claims are typical of the claims of the other Class members.  Plaintiffs were charged excessive and impermissible late fees by MAA for rent paid late.

52.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs are familiar with the basic facts underlying the Class members' claims.

53.     Plaintiffs' interests do not conflict with the interests of the other Class members they seek to represent.  Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously.

54.     Plaintiffs' counsel has successfully prosecuted complex class actions, including several similar class action cases involving the same statutes and law at issue in this case.  Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class members.

55.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class members.  The relief sought per individual Class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by MAA's conduct.  Furthermore, it would be virtually impossible for Class members to seek redress on an individual basis.  Even if Class members themselves could afford such individual litigation, the court system could not.

56.     Individual litigation of the legal and factual issues raised by MAA's conduct would

increase delay and expense to all parties and to the court system.   The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.   MAA is required by law to maintain the records needed to identify the members of the Class, and on information and belief, this information is stored in MAA's electronic property management databases, making the information relatively easy to retrieve.

57.     MAA has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

58.     For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## V.     CLAIM FOR RELIEF

### Violation of Section 92.019 of the Texas Property Code

59.     As set forth above, MAA charged Plaintiffs and the Class impermissible late fees in violation of Section 92.019.   MAA's late fee scheme for past due rent (a) bears absolutely no reasonable relationship to any damage it allegedly suffers when tenants pay their rent but do so 1 - 10 days late, and (b) bears no relationship to the reasonable value of the loss of use of such funds from tenants' due dates until amounts due are paid by tenants. While the property code does not set forth a specific limit on late fees, the trier-of-fact must determine whether MAA's late fee scheme, which currently is and has been applied equally to all its tenants in Texas during the Class Period, violates the Section 92.019.

60.     Plaintiffs seek to recover three times the amount of the overcharges to Plaintiffs and the Class for late fees on rent, along with a $100 penalty for each such violation per class member, attorney fees, interest, and costs of court.

## VII.    JURY DEMAND

62.     Plaintiffs demand a trial by jury and have previously tendered the appropriate fee.

## PRAYER

63.     Plaintiffs seek an order of this Court certifying this case as a class action for the benefit of the Class with adequate notice to same, and, upon final hearing, seek a judgment against Defendants for: (a) statutory damages under Section 92.019 of the Texas Property Code equal to three times the amount of all illegal rent late fees charged to the Class; (b) a statutory penalty equal to $100.00 for each class member for each statutory violation of the property code; (c) prejudgment and post judgment interest at the highest rate allowed by law; (d) reasonable attorney fees; (e) court costs; and (f) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to injunctive relief and unjust enrichment relief.

Respectfully submitted,

By: */s/ Britton D. Monts*
BRITTON D. MONTS
State Bar No. 14303900
THE MONTS FIRM
401 Congress Ave., Suite 1540
Austin, Texas 78701-3851
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Facsimile

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
Chase Tower
221 W. 6th Street, Suite 900
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Facsimile

STACEY V. REESE
Bar No. 24056188
STACEY V. REESE LAW PLLC
910 West Avenue, Suite 15
Austin, Texas 78701
stacey@reeselawpractice.com
(512) 212-1423 – Telephone
(512) 233-5917 – Facsimile

R.MARTIN WEBER, JR.
State Bar No. 00791895
RICHARD E. NORMAN
State Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
(713) 651-1771 – Telephone
(713) 651-1775 – Facsimile

ATTORNEYS FOR PLAINTIFFS AND THE CLASS

## CERTIFICATE OF SERVICE

I certify that on January 25, 2017, I caused the foregoing document to be electronically filed with the Clerk of the Court pursuant to the Electronic Filing Procedures and using the CM/ECF system, and that a true and correct electronic copy was then served on Defendants by and through their counsel of record via the CM/ECF system.

*/s/ Britton D. Monts*
_____
Britton D. Monts