**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| CATHI CLEVEN, TARA CLEVEN, ARELI ARELLANO and JOE L. MARTINEZ, for themselves and all others similarly situated, <br><br>*Plaintiffs*, <br><br> v. <br><br> MID-AMERICA APARTMENT COMMUNITIES, INC., as General Partner of MID-AMERICA APARTMENTS, LP, MID-AMERICA APARTMENTS, LP, Individually and as General Partner of CMS/COLONIAL MULTIFAMILY CANYON CREEK JV LP, and CMS/COLONIAL MULTIFAMILY CANYON CREEK JV LP, <br><br> *Defendants*. | § § § § § § § § § § § § § § § § § § § § § §    CIVIL ACTION NO. 1:16-CV-00820-RP |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE**

BRITTON D. MONTS
Bar No. 14303900
THE MONTS FIRM
401 Congress Avenue, Suite 1540
Austin, Texas 78701
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Facsimile

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
Chase Tower
221 W. 6th Street, Suite 900
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Facsimile

R. MARTIN WEBER, JR.
Texas Bar No. 00791895
RICHARD E. NORMAN
Texas Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
(713) 651-1771 – Telephone
(713) 651-1775 – Facsimile

STACEY V. REESE
Bar No. 24056188
STACEY V. REESE LAW PLLC
910 West Avenue, Suite 15
Austin, Texas 78701
stacey@reeselawpractice.com
(512) 212-1423 – Telephone
(512) 233-5917 – Facsimile

This consumer class action asserts a single statutory claim under TEX. PROP. CODE § 92.019 against Defendants for unreasonable and excessive rent late fees. *See* Plaintiffs' Motion for Class Certification ("MFCC") (Dkt. 75 at 1-3). The MFCC is set for hearing before Judge Lane on November 2, 2017 (Dkt. 95).

In response to the MFCC, Defendants challenge the "ascertainability" of the putative class, relying on the attached declaration of their designated corporate representative, Bryan Ellsberry ("Ellsberry Decl."). Dkt 84-8. The Ellsberry Decl. contradicts his prior testimony and prior statements by Defendants to the Court about their ability to identify class members and their damages, raising for the first time an argument that the class can only be identified by reviewing thousands of individual tenant ledgers. Defendants further challenge ascertainability claiming it would be too hard to identify bankrupt class members who are excluded from the proposed Class Definition. Both factual claims are demonstrably untrue. This isn't the first time a defendant represented by new defense counsel in this case has tried to contest ascertainability using declarations claiming extensive manual review of digital records is required to identify class members. In another case, a federal judge found similar "material representations" about ascertainability were "untrue."[1]

Plaintiffs attached two rebuttal declarations to their MFCC Reply to (1) rebut the Ellsberry Decl. and prove it is untrue, and (2) prove national bankruptcy databases are readily available to quickly and efficiently identify bankrupt class members excluded from the class. The rebuttal declarations are timely and appropriate under the circumstances. Defendants seek to strike the two declarations, asking the Court to ignore competent and reliable proof, and instead rely on falsehoods. The motion should be denied.

---

[1] *See* Section E., *infra*.

**ARGUMENT**

A.      <u>**Defendants' Motion to Strike relates to the Rule 23 element of "ascertainability"**</u>

Defendants' motion to strike concerns evidence related to "ascertainability" of the class. *See, e.g., Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639-640 (5th Cir. 2012) (to maintain a class action, the members must be ascertainable using a "mechanical and objective standard."). In practice, this merely means the definition must not be too vague, and must not depend on subjective criteria (such as a given member's state of mind). *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659-660 (7th Cir. 2015), cert. denied, 136 S. Ct. 1161 (2016). "[A]scertainability requires only that the court be able to identify class members *at some stage of the proceeding*." *Frey v. First Nat. Bank Sw.,* 602 Fed. Appx. 164, 168 (5th Cir. 2015) (emph. added), quoting William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed.2011).

Ascertainability does not mean it must be simple or effortless to identify class members.[2] "Imposing a stringent version of ascertainability because of concerns about administrative inconvenience renders the manageability criterion of the superiority requirement superfluous" and "conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Mullins,* 795 F.3d at 663.

---

[2] *See, e.g., Seeligson v. Devon Energy Prod. Co., L.P.,* 3:16-CV-00082-K, 2017 WL 68013, at *5 (N.D. Tex. Jan. 6, 2017) ("The Court recognizes that identifying all class members in this case poses some administrative challenges. [… ] The Court agrees with Plaintiffs that either through public or DEPCO records, or by affidavit, it is possible to identify each class member based on objective criteria."); *Sartin v. EKF Diagnostics, Inc*., 2016 WL 7450471, at *6–7 (E.D. La. Dec. 28, 2016) ("...Rule 23 does not require that all members of a class be instantly determinable without any individual examination […] class membership can feasibly be determined by reviewing the actual faxes to determine the individuals and entities to whom they were addressed. This straightforward, mechanical procedure can be done without resort to individualized hearings or inquiry"); *Rodriguez v. Flowers Foods, Inc*., 2016 WL 7210943, at *4–5 (S.D. Tex. Dec. 13, 2016) ("Because the determination of which distributors hired assistants or helpers will be relatively straightforward, the class is ascertainable even though Defendants cannot identify those distributors without individualized testimony."); *see also* Dkt. 92, Plaintiffs' Reply, at 4 and cases cited therein.

2

Plaintiffs seek certification of a class specifically defined by objective criteria.[3] (Dkt. 75, MFCC, at 4). Whether someone was a tenant of Defendants and paid rent late fees are objective criteria, and identifying such persons is a mechanical process. Although the parties agree class members can be identified using objective data, Defendants presently contend this process will be too difficult because, in their (current) view, ***manual*** review of tenant ledgers is necessary. But assuming *arguendo* that manual review was necessary, the proposed class definition still satisfies the "ascertainability" requirement. MFCC Reply at 4, 5.

**B.     Plaintiffs' rebuttal declarations were prompted by Defendants' new strategy**

1.     Defendants' original position on ascertainability

Defendants, however, did not always contend a manual review was necessary. Plaintiffs took Defendants' Rule 30(b)(6) deposition on May 18, 2017. **Ex. 1** (Notice); Dkt. 72 (Court Order compelling deposition). Defendants designated Mr. Ellsberry for all topics in the notice. *See*, *e.g.*, Ellsberry Depo at 10:6-11-13 (Dkt, 75-12). He conceded class members could be identified by Defendants' IT department digitally.[4] Although Ellsberry tried to couch some answers as "opinion," as the Defendants' designated 30(b)(6) representative, Plaintiffs were entitled to rely on his answers as Defendants' answers. *See Brazos River Auth. v. GE Ionics,*

---

[3] The Class contains exclusions, including persons adjudged to be bankrupt during the class period.

[4] Dkt. 75-12, Ellsberry Depo. at 109-112 (emphasis added) (Q. ...MAA can determine who the class members are and how much they paid in late fees? **A. *Yes, I believe they should be able to identify* the residents that were charged late fees**;..."; Q. But then though there might be some extra work required***, it could be done? A. Yes. IT should be able to provide that information***.; Q. ...that's the same with the Colonial Legacy properties who are already using the Yardi System at the time of the merger, ***you could get that data if the Court ordered it***? A. I'd have to coordinate with the IT department, but,***yes, I believe so.*** Q. .... if this case is certified as a class, there might well be quite a few *people included in the class,* do you foresee any significant problems other than just man and woman hours of work, but ***do you see any problem identifying who those people are using the technology that MAA has***? A. I would have to yield to the IT department on what complexities would exist. Q. ... would not be feasible to do it? A. That area is not my expertise. Providing my opinion, no, ***I do not think that*** [] ***would be an issue***.).

*Inc.,* 469 F.3d 416, 433 (5th Cir. 2006) ("When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation.... This extends not only to facts, but also to subjective beliefs and opinions.").

Plaintiffs also sought written discovery regarding "the number of putative class members and the rent late fees they paid during the class period." Dkt. 59 (Defendants' Resp. to Plaintiffs' Brief Regarding Discovery Matters). Defendants' counsel represented to the Court that Defendants would, in lieu of granular data prior to certification, "provide <u>summary</u> information concerning <u>the approximate number of tenants in the purported class</u> and the <u>aggregate rent late fees</u> during the purported class period." *Id.* at 9. Similar representations were made by Defendants' counsel to Judge Pitman during a discovery hearing on this very issue. *See* Dkt. 92, Plaintiff's Reply at 2 and at Dkt. 92-16. Of course, to be able provide information on "the number of tenants in the purported class," Defendants necessarily were able to ascertain the "tenants in the purported class." Defendants ultimately produced Excel spreadsheets showing all rent late fees charged in Texas during the class period using data collected from Defendants' Yardi software. *See* Dkt. 75, Ex 28-31 (sample exemplar pages filed under seal).

Defendants' Yardi software permits compilation of individual payment data as necessary to identify class members. *See* Dkt. 92, Plaintiff's Reply, at 2-3 and at Dkt. 92-40; Dkt. 75, MFCC, at 14 and at Dkt. 75-7, -12, -12, -18, -28, -29, -30, -31. Defendants never disclosed any retained expert or even witness with an opinion stating otherwise.

2. <u>Defendants changed course and now challenge ascertainability</u>

In their response to the MFCC, Defendants rejected their prior position that class members could be identified through use of IT, and amazingly rely on a declaration by the same Mr. Ellsberry to now assert:

> ... the [Yardi] system cannot run a report to show tenant-by-tenant late fees actually paid ... Such information can only be determined from an individual review of each tenant's ledger.

Dkt. 84, Ex 8 ¶ 8, 9.

Defendants had listed Ellsberry as a fact witness but did not suggest he (or anyone else) had anything to say about the capabilities of or data within Yardi to identify class members. *See* Defendants' Rule 26 Initial Disclosures at 4, **Ex. 2**. Defendants certainly never disclosed that Mr. Ellsberry was going to offer expert opinion testimony <u>directly opposite to the opinion he provided at his deposition</u>.

Mr. Ellsberry, who at his deposition conceded he is not an IT expert (or even an IT department employee), wrongly claims Yardi cannot be queried to gather class data. Based on Ellsberry's changed opinion, Defendants now contend the class is not ascertainable because to do so would require extensive manual review of thousands of tenant ledgers (which ironically, are generated by and maintained within the Yardi data system). While such "labor" does not defeat ascertainability, as briefed by Plaintiffs in the MFCC Reply, this lawyer-engineered assertion is incredulous on its face, considering the sophisticated property management and accounting system used by Defendants, a $15 billion conglomerate, to manage more than 97,000 apartment units nationwide.[5]

## C.  The Jewell Declaration directly rebuts the Ellsberry Declaration

To remove any doubt, Plaintiffs attached to their MFCC Reply the declaration of expert Kevin Jewell to address Ellsberry's changed opinion and misleading declaration. Dkt. 92 (Plaintiff's Reply); 92-1 (Jewell Decl.). Defendants do not even suggest Mr. Jewell is not

---

[5] *See, e.g.*, MAA's latest SEC 10K Report at 28-35.
http://ir.maac.com/Cache/38226276.PDF?Y=&O=PDF&D=&FID=38224965&T=&OSID=9&IID=103123.

qualified, nor do they challenge the substance of any of his testimony. To be clear, this dispute has little if anything to do with the facts or the truth.

The Jewell Decl. directly rebuts Ellsberry's new and changed opinion regarding whether Defendants' Yardi system contains late fee payment data in workable form that can be used to identify class members in an efficient and administratively feasible manner. As discussed above, when speaking for Defendants at the Rule 30(b)(6) deposition, Ellsberry opined that Defendants' IT department could identify class members with its software and data. Ellsberry certainly did not suggest in his deposition any purported need to manually review individual tenant records. Ellsberry's new and different opinion was not disclosed until Defendants' responded to the MFCC. Plaintiffs could not know ahead of time that rebuttal proof was needed. The Jewell Decl. exposes Defendants' efforts to manufacture an inaccurate and misleading record. For example, Jewell explains:

> 10. ... Mr. Ellsberry admits the "Resident Ledger" data necessary for such calculation resides within the system in the underlying database. Mr. Ellsberry fails to disclose (or does not know) that this data can be exported from the underlying database in manners other than the pre-defined reports shipped with the default Yardi system.
> 11. One manner defendants could export this data would be to create a custom report containing the relevant information. ...
> 12. ...I sought out an experienced independent Yardi information technology consultant, Saxony Partners based in Dallas, Texas, and solicited a quote for such a report. The consultant stated that writing the needed query and extracting the needed data from the Yardi system would be "a few days' worth of work." ...
> 13. A simpler manner of accessing this data would be to bypass the Yardi software and access the underlying database directly. Using Structured Query Language (SQL), or other method of direct query, all of the data displayed in the individual resident ledgers can be exported from the underlying database to a single file or directory of files for analysis. ...
> 14. Once extracted in bulk from the Yardi database (and, if necessary, any archived predecessor databases), the data in the resident ledgers can in turn be analyzed by a computer program to determine the late fees paid by each class member on a class-wide basis.

Dkt. 92-1.  The Jewell Decl. will help the Court find the truth regarding Defendants' software and data.  It is proper rebuttal evidence.

      1.      <u>The Jewel Declaration is timely.</u>

The Scheduling Order does not address designation of rebuttal experts. (Dkt. 40).  Rule 26 provides that expert opinions "intended solely to contradict or rebut evidence on the same subject matter identified by another party" are to be disclosed "within 30 days after the other party's disclosure." FED. R. CIV. P. 26(a)(2)(D)(ii).  Ellsberry's new opinion contradicting his deposition testimony was first disclosed by Defendants on July 28, 2017.  Dkt. 84.  Plaintiffs served the Jewel Declaration less than 30 days later, on August 24, 2017.  Dkt 92-1 and Dkt. 93.[6]  The declaration is timely and the motion to strike should be denied.

      2.      <u>Assuming *arguendo* the Jewell Declaration is untimely, it is nevertheless "justified" by the new and changed opinion of Ellsberry.</u>

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use the information or witness to supply evidence on a motion, at a hearing, or at a trial, <u>unless the failure was substantially justified or is harmless</u>." FED. R. CIV. P. 37(c)(1) (emph. added).  When determining whether to exclude expert testimony that has been improperly designated, the Fifth Circuit considers four factors: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Betzel v. State Farm Lloyds,* 480 F.3d 704, 707 (5th Cir. 2007) (court abused its discretion by refusing to allow late expert testimony that was critical to plaintiff's case).

---

[6] In fact, Jewell had already been previously designated as a *potential* rebuttal expert.  Dkt. 77.

7

Ellsberry previously testified Defendants' software and data could be used to identify class members. Plaintiffs obviously had no need to offer testimony to correct Ellsberry's new and different opinion until learning about it. Jewel's testimony is important, as ascertainability is a necessary element for certification. There is no unfair prejudice to Defendants; Plaintiffs supplemented their expert disclosures on August 24, 2017 (the day they filed their reply attaching the Jewell Decl.). **Ex. 3**. They emailed new defense counsel and offered several days when Jewell was available for a deposition, but Defendants did not respond. **Ex. 4**. The motion to strike should be denied. *See, Betzel*, 480 F.3d at 707-9.[7]

Defendants rely on the result in the easily-distinguished *YETI Coolers, LLC v. RTIC Coolers, LLC,* 2017 WL 394511, at *3 (W.D. Tex. Jan. 27, 2017). That case did not involve a witness directly contradicting his prior opinion testimony as a designated corporate representative. Indeed, Yeti "[f]ail[ed] to provide the Court with **any** explanation" for its late expert report. *Id.* at *3 (emphasis added). Second, that court noted the late "expert report could not be rebutting a claim on which YETI bears the burden of proof, since the burden of proof on apportionment is on RTIC." *Id*. at 2. Here, Plaintiffs bear the burden on ascertainablity, and the Jewell Decl. rebuts Ellsberry's (new and changed) nonretained expert opinion about the alleged technical capabilities of Yardi .[8] Finally, rather than months before a pretrial class certification hearing, in *Yeti*, the trial was only weeks away. *Id.*

---

[7] *See also, e.g., PrevMED, Inc. v. MNM-1997, Inc.,* 2017 WL 785656, at *23 (S.D. Tex. Feb. 28, 2017) (Lake, J.; denying motion to strike rebuttal witness); *Villarreal v. City of Laredo*, 2008 WL 2770110, at *5 (S.D. Tex. July 11, 2008); *Steadfast Ins. Co. v. SMX 98, Inc*., 2008 WL 62199, at *14 (S.D. Tex. Jan. 3, 2008); *Cotroneo v. Shaw Envtl. & Infrastructure, Inc.,* 2007 WL 1173626, at *1–2 (S.D. Tex. Apr. 18, 2007).

[8] Ellsberry is acting as a nonretained expert for Defendants (his employer) by offering a new and changed opinion on the technical capabilities of Yardi. His declaration falls under FRE 702 regarding expert opinions even though Defendants did not disclose him as an expert.

8

Nor is the Jewell Dec. necessitated by the testimony of Plaintiffs' accounting expert, Otto Wheeler**,** as asserted by Defendants.  Mr. Wheeler never offered any opinion suggesting Defendants' Yardi software and its IT department could not run a query to capture the identities and damages of class members.  He did testify that based on the documents he had, primarily the tenant's electronic ledger, he could review objective data to determine if she was charged and paid a rent late fee during the class period.  But no one, not even Defendants, disputes that fact.

### D.     **The Prutsman Declaration is proper rebuttal evidence too**

The James Prutsman declaration ("Prutsman Decl.") (Dkt. 92-2) debunks Defendants' false contention that excluded bankrupt tenants cannot be identified.[9]  Reply at 5; Resp. to MFCC at 9, 10.  Mr. Prutsman, an officer of a prominent national class action administration company avers that these companies use national bankruptcy databases, updated daily, that can be accessed easily and inexpensively to cull tenants adjudged bankrupt during the class period:

> 3.     ... we maintain or subscribe to several national databases to provide various types of information about class members.  Those databases include a national registry of bankruptcies, which is updated daily.
> 4.     If it were necessary to determine if any members of a potential class of Texas residential tenants had filed bankruptcy and received a discharge within the class period, that could be accomplished. ... The process would be relatively simple, and the cost per name would be nominal.  The results of the search would identify any class members discharged in bankruptcy if those persons needed to be excluded from the class before notice was transmitted.

Dkt. 92-2.  This proof directly rebuts a specious argument raised by Defendants for the first time in their response to the MFCC that the class is not ascertainable, in part, because there is no way to identify bankrupt tenants <u>excluded</u> under the class definition.  Resp., Dkt. 84 at 9, 10 ("[N]o way to determine ... if any of the tenants on the spreadsheet had been adjudged to be bankrupt

---

[9] The class definition excludes "persons adjudged to be bankrupt during the class period." MFCC at 4, n. 6.

during the class period."). Without question, the Prutsman Decl. is useful to the Court as it conducts a rigorous analysis because it answers the question raised by Defendants.

### E.   **Another defendant represented by new defense counsel tried this same tactic before with bad results**

This isn't the first time new defense counsel in this case has tried to defeat class certification for a client by claiming manual review of business records is required to identify class members. In *Soutter v. Equifax Information Services, LLC,* Case No. 3:10-cv-107 (E.D. Va.), defense counsel's client, Equifax, submitted employee declarations challenging its ability to ascertain a consumer class, claiming "each consumer file must be manually reviewed" and an "extensive, multi-step, mostly manual process" was required and therefore, the element of ascertainability was not met. **Ex. 5** at 15 and **Ex. 6**. That argument is remarkably similar to the argument advanced in this case.

In the April 15, 2015 order certifying the class against Equifax in *Soutter*, Senior Judge Robert Payne rejected Equifax's ascertainability arguments, and further noted that Equifax had "blurred" the record with "material representations ... [regarding ascertainability that] were, in fact, untrue."  Order certifying class in *Soutter v. Equifax*. **Ex. 7** at 3, 7, 16-20 ("In general, courts do not look favorably upon the argument that records a defendant treats as accurate for business purposes are not accurate enough to define a class.").  In *Soutter*, the defendant's efforts to present a false record were soundly rejected by the court.  The same thing should happen here.

The Jewell and Prutsman declarations are necessary to ensure the Court has an accurate record for class certification; not a "blurred" and "untrue" one.  The motion should be denied.

10

**CONCLUSION AND PRAYER**

The Jewell and Prutsman declarations at issue here provide helpful and undisputed evidence to assist the Court with its rigorous analysis. This is a pretrial hearing, not a trial on the merits, and the Court has wide discretion to consider evidence before it. The motion to strike should be denied.

Respectfully submitted,

*/s/ Britton D. Monts*
BRITTON D. MONTS
Bar No. 14303900
THE MONTS FIRM
401 Congress Avenue, Suite 1540
Austin, Texas 78701
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Facsimile

R. MARTIN WEBER, JR.
Texas Bar No. 00791895
RICHARD E. NORMAN
Texas Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
(713) 651-1771 – Telephone
(713) 651-1775 – Facsimile

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
Chase Tower
221 W. 6th Street, Suite 900
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Facsimile

STACEY V. REESE
Bar No. 24056188
STACEY V. REESE LAW PLLC
910 West Avenue, Suite 15
Austin, Texas 78701
stacey@reeselawpractice.com
(512) 212-1423 – Telephone
(512) 233-5917 – Facsimile

ATTORNEYS FOR PLAINTIFFS AND THE CLASS

## CERTIFICATE OF SERVICE

I certify that on September 26, 2017, I caused the foregoing document to be electronically filed with the Clerk of the Court pursuant to the Electronic Filing Procedures and using the CM/DKT. system, and that a true and correct electronic copy was then served on Defendants by and through their counsel of record via the CM/DKT. system.

*/s/ Britton D. Monts*
Britton D. Monts