IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CATHI CLEVEN, TARA CLEVEN, § <br> ARELI ARELLANO and § <br> JOE L. MARTINEZ, for themselves and all § <br> others similarly situated, § <br> Plaintiffs, § <br> v. § <br> § <br> MID-AMERICA APARTMENT § <br> COMMUNITIES, INC. as General Partner § <br> of MID-AMERICA APARTMENTS, LP, § <br> MID-AMERICA APARTMENTS, LP § <br> Individually and as General Partner of § <br> CMS/COLONIAL MULTIFAMILY § <br> CANYON CREEK JV LP, AND CMS § <br> COLONIAL MULTIFAMILY CANYON § <br> CREEK JV LP, § <br> Defendants. § | CAUSE NO. 1:16-CV-820-RP |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

      Before the court is Plaintiffs' Opposed Motion for Class Certification (Dkt. #126) and related pleadings.[1] Oral arguments from the parties were heard and evidence was received at a hearing on March 1, 2018. After reviewing the evidence, the pleadings, the relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

---

[1] The Motion was referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I. BACKGROUND

Plaintiffs are tenants of Defendants' residential apartment communities throughout Texas. They seek to certify a class under Rule 23(b)(3). They define the putative class as "all persons during the Class Period who (i) were residential tenants of apartment properties in the State of Texas under written leases where MAA or its predecessor in merger, Colonial, served as an owner or landlord, and (ii) were assessed and paid an initial rent late fee of $75.00 and/or a daily rent fee of at least $10.00." Dkt. #126 at 3. The Class Period is defined as June 29, 2012 through September 30, 2017. *Id.* at n.9.

In 2013, Colonial Property Trust ("Colonial") and Mid-America Apartments ("MAA") merged. Prior to the merger, MAA charged late fees according to a $50/$10 late-fee scheme, where $50.00 was charged as an initial late fee, and a daily rent fee of $10.00 was charged for each additional day late. Pl. Ex. 13 at 24:3-10. Prior to the merger, Colonial generally charged according to a similar scheme, with a $75.00 initial late fee and a $10.00 daily fee. *Id.* at 39, Pl. Ex. 21 at 5. After the merger, Defendants instituted an across the board $75/$10 late-fee scheme throughout Texas. The late fees are assessed automatically by Defendants' property management system, Yardi Voyager, beginning shortly after midnight on the fourth date of the month. *See, e.g.,* Pl. Ex. 7.

Plaintiffs allege there is no evidence that Defendants ever estimated their damages resulting from late-paid rent as a consideration in implementing their late-fee scheme or assessing any late fee paid by a putative class member. Dkt. #126 at 6 (citing Pl. Ex. 24; Pl. Ex. 13 at 48-49). As a result, they argue the late fees violate Texas Property Code § 92.019, which provides in relevant part that "a landlord may not charge a tenant a late fee for failing to pay rent unless . . . the fee is a reasonable estimate of uncertain damages to the landlord that are incapable

2

of precise calculation and result from late payment of rent." TEX. PROP. CODE § 92.019(a)(2). *Id*. at 12-13.

Further, the statute goes on to prescribe the consequences of a violation: "A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees." Importantly, the statute states that "a provision of a lease that purports to waive a right or exempt a party from a liability or duty under this section is void."

This action was originally brought by plaintiffs Cathi Cleven and Tara Cleven, on their own behalf and on behalf of all others similarly situated. Dkt. #1 at 1. Two additional class representatives, Areli Arellano and Joe L. Martinez were added by way of Plaintiffs' Second Amended Complaint. Dkt. #36. The named plaintiffs are all tenants of Defendants. They all signed TAA form leases outlining the late-fee scheme described above. Each has paid rent late and been automatically assessed a fee according to the late-fee scheme by Defendants' Yardi Voyager management system. Each has paid the late fee. On one occasion, the Clevens were assessed an initial late fee and daily late fees but received a waiver of the initial late fee. Each of these instances is identifiable in Yardi Voyager. Each named plaintiff was deposed by Defendants in advance of the class certification briefing and attended a portion of the March 1 hearing.

## II.     THE MOTION FOR CLASS CERTIFICATION

### A.     Legal Standard

Class certification is controlled by Federal Rule of Civil Procedure 23. Rule 23(a) imposes four prerequisites on plaintiff-putative class members seeking certification of a class: (1) numerosity, i.e., a class so large that joinder of all members is impracticable; (2) commonality,

i.e., that there are questions of law or fact common to the class; (3) typicality, i.e., that the named plaintiffs' claims or defenses are typical of those of the class; and (4) adequacy of representation, i.e., that the representatives will fairly and adequately protect the interests of the class. *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 216 (5th Cir. 2012)(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

Additionally, where, as here, plaintiffs seek class certification under Rule 23(b)(3), they must also demonstrate (1) predominance, i.e., that questions common to the class members predominate over questions affecting only individual members; and (2) superiority, i.e., that class resolution is superior to available methods for fairly and efficiently adjudicating the controversy. *Ackal*, 700 F.3d at 216 (quoting *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005).

Finally, the Fifth Circuit has interpreted Rule 23 to contain an implied prerequisite of ascertainability. "Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'" *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.3 (5th Cir. 2007); *see also DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

To determine whether class certification is appropriate, courts "must conduct intense factual investigation," *Funeral Consumers All., Inc.* v. *Serv. Corp. Int'l*, 695 F.3d 330, 345 (5th Cir. 2012)(quoting *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 420 (5th Cir. 2004)), and the "unique facts of each case will generally be the determining factor governing certification." *Robinson*, 387 F.3d. at 421. The party seeking class certification bears the burden of demonstrating that the requirements of Rule 23 have been met. *Funeral Consumers All., Inc.*,

695 F.3d at 345 (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737-38 (5th Cir. 2003)).

### B.     Analysis of Rule 23(a) Factors

#### 1.     *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable. To satisfy this requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000)(internal quotations omitted). Leading commentators caution that there is no definite standard as to what size class satisfies Rule 23's numerosity requirement. *See* 7A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1762 (3d ed. 2017 update).  By way of example, however, Fifth Circuit has stated that a putative class of 100-150 members is "within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624 (5th Cir. 1999).

Beyond the number of putative class members, courts may also consider other factors in determining whether joinder of all members is impracticable. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. Unit A 1981). "The geographic dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim" may also be relevant factors in this analysis. *Id.* (citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980)).

Here, the evidence demonstrates that the putative class members number in the thousands, with many thousands of individual late charges assessed by Defendants. Pl. Ex. 13 at 105-108; Pl. Exs. 28, 29, 30, 31. Further, at the March 1 Hearing, Defendants' counsel represented that Defendants do not dispute numerosity. In light of these facts and

representations, the putative class members, numbering in the thousands, cannot be practically practicably joined in a single action. Plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

To satisfy Rule 23(a)(2)'s commonality requirement, Plaintiffs must demonstrate that the class claims "'depend upon a common contention' and the common contention 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012)(quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Put differently, there must be a single question of law or fact common to the members of the class. *Dukes*, 564 U.S. at 369.

The threshold for commonality is not high: the Fifth Circuit has recognized that "even a single common question will do." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014)(citations omitted).

Plaintiffs argue that "the central question in this litigation will be the alleged unlawfulness of the uniform $75/$10 rent late fee charges, in light of the mandate of Section 92.019(a)(2)," stating that because the late-fee formula was a uniform scheme, which did not vary from putative class member to putative class member, the answer to the liability questions also will not vary from one to another, i.e., "the lawfulness of those fees controls Defendants' liability across the entire Class." Dkt. #126 at 18.

Defendants argue that "class membership, damages, and other aspects of Plaintiffs' claims" must be determined by a tenant-by-tenant review, and therefore, Plaintiffs fail to establish commonality. This argument is flawed for two reasons. First, Defendants ignore the precedent they quote: a common question exists where the answer would "resolve an issue that is

6

central to the validity of each one of the claims in one stroke," just as Plaintiffs explain. All putative class members, by definition, were exposed to the same $75/$10 late-fee formula for at least some part of the class period. Whether that uniform scheme was lawful is the central question to the validity of each putative class member's claims, and does not require a tenant-by-tenant analysis. Second, Defendants' continued reliance on the misleading "tenant-by-tenant review" trope is misplaced – even if this were true, the fact that class administration details and damages may be somewhat unique by tenant does not disturb the conclusion that Plaintiffs have established commonality.

### 3. Typicality

In order to meet the typicality requirement, "the claims or defenses of the parties [must be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3); *see Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999). Like commonality, the test for typicality is "not demanding." *Mullen*, 186 F.3d at 625. Typicality focuses on "the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). "Typicality does not require identity of claims but does require that 'the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *Villagran v. Central Ford., Inc.*, 524 F. Supp. 2d 866, 883 (S.D. Tex. 2007)(quoting *James v. City of Dall.,* 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–41 (5th Cir. 2012)).

Here, there may be some differences in the exact fact patterns of Plaintiffs and putative class members. Some may have been residents for the entirety of the Class Period, and some for

only a portion of the Class Period. Some may have lived at properties at which the post-merger rates of the uniform late-fee scheme was in effect for the entire class period, some at properties where the scheme was in effect for only part. Some may have paid a late fee on more occasions than others. Such variations are not meaningful differences in light of the class definition proposed by Plaintiffs. They do not make Plaintiffs' claims atypical of the class members' claims. Plaintiffs' claims and those of the putative class members arise from common conduct: a uniform late-fee scheme was in effect for their leases and they were automatically charged by Defendants' property management system according to that scheme when their rent was not timely paid. Along the same lines, the class claims all share Plaintiffs' legal theory: that the assessment by Defendants of such a late fee without an estimation of damages to provide a reasonable basis for the fee is a violation of Texas Property Code § 92.019. Plaintiffs have satisfied the typicality requirement.

### 4. Adequacy

In the Fifth Circuit, the adequacy requirement "mandates an inquiry into (1) the zeal and competence of the representatives' counsel and the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001)(citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 474 (5th Cir. 1982) (alterations omitted)). *See also Berger v. Compaq Computer Corp.*, 279 F.3d 313, 313 (5th Cir. 2002) (per curiam)(denying petition for panel rehearing and clarifying that its *Berger* opinion, *supra*, 257 F.3d 475, had not "changed the law of this circuit regarding the standard for conducting a rule 23(a)(4) adequacy inquiry").

i.  Class Counsel

Defendants argue that this is a lawyer-driven suit in which Plaintiffs' counsel inappropriately solicited and recruited the class representatives. They also question the adequacy of Plaintiffs' counsel based on interactions surrounding recent depositions. Dkt. #129.

Without addressing the interactions surrounding recent depositions, which appear on the whole to paint Defendants' counsel with the same brush they attempt to wield against Plaintiffs' counsel, Plaintiffs' counsel have set forth evidence, and demonstrated to the court throughout this litigation to date, that they have the requisite zeal and competence required by Rule 23. *See, e.g.,* Pl. Exs. 33; 34. The undersigned recommends appointing Plaintiffs' counsel as class counsel.

ii.  Class Representatives

Defendants argue that the representatives "do not possess any level of knowledge and understanding of the claims they are bringing on behalf of a putative class to be capable of controlling or prosecuting the litigation." Dkt. #129 at 16. To support this contention, they pluck choice excerpts from the putative class representatives' depositions. In brief, a review of the complete deposition selections provided to the court in connection with this Motion reveal that those depositions have an entirely different timbre than Defendants would have the court believe. The representatives, who appeared for a substantial portion of the class certification hearing, are certainly neither lawyers nor as visibly outraged as Defendants suggest is required.[2] Yet they have a layperson's understanding of their claims, an understanding of the nature of a class action,

---

[2] Defendants further suggest that the fact that none of the four representatives has moved away from the MAA property and that all renewed leases without attempting to negotiate the late fee scheme outlined in their leases reveals that this is a lawyer-driven case, however, an equally-plausible inference is that these are price-sensitive consumers in a tight housing market.

and appear to be motivated to serve as class representatives by a genuine desire to advance the shared interests of other tenants who were subjected to the Defendants' allegedly unlawful late fee scheme. *See generally* Pl. Exs. 42-45; 1, 2, 8, and 9.

As to the argument that the representatives were merely solicited by class counsel or referred by family members, the undersigned is not persuaded. As with Defendants' other arguments, even if the court agrees with Defendants' characterization of Plaintiffs' relationship with class counsel, while solicitation can weigh against a finding of adequacy, it is not dispositive. *See Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 535-36 (N.D. Tex. 2005). Further, the narrative revealed in the representatives' testimony, in sum, does not "raise doubt as to [their] willingness and ability to take an active role in and control the litigation." *See id.* (citing *Berger*, 257 F.3d at 479)). The class representatives have satisfied the adequacy requirement.

### C. Analysis of Rule 23(b)(3) Factors

Plaintiffs satisfy the Rule 23(a) factors, but because Plaintiffs seek to certify a class under Rule 23(b)(3), they must satisfy its additional requirements, too. Rule 23(b)(3) requires that Plaintiffs demonstrate both that questions common to the class members predominate over questions affecting only individual members, and that class resolution is superior to alternative methods for adjudication of the controversy. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

#### *1. Predominance*

The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)). It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.

When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though some other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citing 2 W. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, pp. 196-97 (5th ed. 2012) and 7 AA CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1778, pp. 123-24 (3d ed. 2005))(internal quotations and citations omitted).

Plaintiffs argue that "the central question in this litigation will be the alleged unlawfulness of the uniform $75/$10 rent late fee charges, in light of the mandate of Section 92.019(a)(2)," stating that because the late-fee formula was a uniform scheme, which did not vary from putative class member to putative class member, the answer to the liability questions also will not vary from one to another, i.e., "the lawfulness of those fees controls Defendants' liability across the entire Class." Dkt. #126 at 18. Further, they argue, "while the quantum of class members' statutory damages will depend on how many days late they paid, individualized damage questions do not prevent certification." *Id.* at 23. Finally, they argue that the calculation of these damages is mechanical and does not require individual decisions and that "even wide disparity among class members as to the amount of damages does not preclude class certification." *Id.* at 26 (citing *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014)). They further urge that Defendants' multiple affirmative defenses are not individualized and can be resolved "in one move" for all class members. *Id.* at 25.

In response, Defendants continue to attempt to convince the court that "it is simply not possible—through Yardi or otherwise—to determine who actually paid an assessed late fee, or whether a late fee was actually paid, without individually examining each late fee assessed" and

11

that therefore, Plaintiffs have not established predominance. The court's skepticism of the Yardi premise, in light of the overwhelming expert testimony that it is in fact possible to extract in bulk the data that answers these questions, is discussed in detail in its discussion of ascertainability, *infra*, but Defendants' argument is similarly unavailing here.

Defendants argue that because Plaintiffs have stated the statute necessarily requires a prospective reasonable estimate of damages, an individualized assessment is necessary for each putative class member. The court need not reach the merits of this statement at this time, because even if the statute requires such an individualized assessment, the evidence before the court at this stage suggests that Defendants never engaged in any reasonable estimate of damages. Thus, where Defendants can point to no instance of estimation, the individualized assessment is complete.

Defendants rely on *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003), arguing that it "mandates denial of certification." Dkt. #29 at 18. This characterization goes too far, as *O'Sullivan* can be distinguished. *O'Sullivan* turned on the Department of Housing and Urban Development's reasonable relationship test and policy statements by the agency suggesting that test requires an inherently particularized two-part inquiry: (1) whether a lender provided goods or services in connection with the particular transaction, and (2) whether the lender's compensation was reasonably related to the value of those goods or services. Here, there is no such particularized inquiry mandated by the statute, neither is there any agency policy statement supporting such a construction. Indeed, as Defendants emphasize, *see, e.g.,* Def. Resp. Brief, Dkt. #29 at 15, there is no case law interpreting the statute at all.

On the facts before the court, *O'Sullivan* is potentially analogous at best. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 419 & n.19 (explaining that *O'Sullivan* turned on the

extent to which individual plaintiffs were exposed to the unauthorized practice of law). Here, it is straightforward that putative class members were charged at least one late fee according to the 10% late fee scheme. No complicated individualized harm analysis is necessary.

Further, Defendants argue their defenses and counterclaims require individualized inquiry, but fail to address the plain language of the statute suggesting that such defenses and counterclaims are not permissible.[3] Their permissibility can be determined on a class-wide basis. Defendants fail to convince the undersigned that if those affirmative defenses and counterclaims may go forward and require individual analysis, that these questions are more prevalent or important than the class-wide issues.

For all of these reasons, Plaintiffs have successfully demonstrated that questions common to the class members predominate over questions affecting only individual members.

    2.    *Superiority*

Rule 23(b)(3)'s superiority requirement asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "As is the case with Rule 23(b)(3) generally, the superiority analysis is fact-specific and will vary depending on the circumstances of any given case." *Robertson v. Monsanto Co.*, 287 F. App'x 354, 361 (5th Cir. 2008)(citing 7AA CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE §1783(3d ed. 2005)).

The four factors that address superiority are: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the

---

[3] Section 92.019(d) states "a provision of a lease that purports to waive a right or exempt a party from a liability or duty under this section is void," and Plaintiffs argue that Defendants have committed *per se* violations of the statute.

particular forum; and (4) the difficulties likely to be encountered in the management of a class action. FED. R. CIV. P. 23(b)(3).

As to the first and second factor, Plaintiffs argue that "the existence of a negative value suit" is "[t]he most compelling rationale for finding superiority." *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 738 (5th Cir. 1996). They argue this case "is a classic negative value suit" in which each putative class member "suffered relatively minimal damages." Dkt. #126 at 29. They note that no absent class members have evidenced interest in separate actions and that no other litigation (other than the *Brown* case, which concerns another part of MAA's apartment portfolio) involves this controversy.

In response, while apparently conceding that no other cases involving this controversy or statute exist, *see* Dkt. #129 at 30, Defendants argue that the statute incentivizes individual lawsuits through the availability of treble damages, a $100 penalty, and attorney's fees. As a result, they argue, this is not a negative-value suit. In support of this position, Defendants rely primarily on the Fifth Circuit's decision in *Ticknor v. Rouse's Enters. L.L.C.*, 592 F. App'x 276 (5th Cir. 2014).

In *Ticknor*, the Fifth Circuit affirmed the trial court's denial of certification on the basis of predominance and superiority, noting that the availability of attorney's fees and punitive damages is a "common basis for finding non-superiority, as the aggregation of claims is not necessary to facilitate suits in such instances." *Id.* at 278. This decision, which Defendants argue is "[s]quarely on point for these purposes," went on to state that the broad discretion enjoyed by district courts regarding certification was "critically important" to its decision, and noted that that broad discretion may lead to disparate certification results, observing that courts had both certified and declined to certify classes like the one at issue in *Ticknor*. Thus, while the

availability of attorney's fees, treble damages, and a $100 penalty is a factor to consider, *Ticknor* does not stand for the proposition that it is dispositive of the superiority determination. *See Sistrunk v. TitleMax, Inc.*, 5:14-CV-628-RP, Dkt. #213 at 19-20 (W.D. Tex. Aug. 26, 2016). On balance, the first two factors weigh in support of certification.

As to the third factor, the desirability of concentrating the litigation of claims in the particular forum, Plaintiffs argue that judicial efficiency—both because of the potential number of individual cases if the class is not certified and the "considerable energy" the court has already spent developing familiarity with the Statute and the parties—make this forum desirable and well-suited to adjudicate the putative class's claims. Defendants do not respond to Plaintiff's arguments regarding forum. The undersigned finds Plaintiffs' arguments persuasive and finds that this favor weighs in favor of certification.

The fourth factor is a closer call. Defendants' arguments as to the ascertainability of putative class members gain more mileage as manageability arguments, and Defendants' critique that the class definition proposed by Plaintiffs is not "a model of clarity" is somewhat persuasive. Nevertheless, the undersigned considers all the arguments, expert testimony (particularly as to the capabilities of a bespoke Yardi query to aggregate the necessary data), and other evidence before the court. Given the near uniformity of the allegations and the common evidence to be used to prove them, a single proceeding is the simplest and most manageable way to address the issues in this case.

Finally, Defendants argue that superiority should be defeated by the "lack of track record" regarding Section 92.019, that is, that because no prior case–state or federal—has interpreted the statute, class certification is inappropriate. In support of this proposition, they cite *Castano* and *Norwood*. Each is distinguishable.

*Castano* was a multistate, mass tort case involving various state tort laws with a class period spanning 50 years. It was described by the Fifth Circuit as perhaps "the largest class action ever attempted in federal court." The Fifth Circuit held that the district court had erred in failing to address the conflicts of law present in the case and "to consider how variations in state law affect predominance and superiority." *Id.* at 740. The Fifth Circuit stated that: "here, we cannot say that it would be a waste to allow individual trials to proceed, before a district court engages in the complicated predominance and superiority analysis necessary to certify a class." *Id.* at 748 (citing MANUAL FOR COMPLEX LITIGATION § 33.26 ("Fairness may demand that mass torts with few prior verdicts or judgments be litigated first in smaller units . . . until general causation, typical injuries, and levels of damages become established.")).

Likewise, the trial court in *Norwood*, another multistate, mass tort case, found that superiority was lacking because the suit was not a negative value suit and had multiple manageability problems, including "numerous variations in state law, many of which could lead to conflicts." *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 605 (W.D. Tex. 2006). Its statement that the absence of prior verdicts or judgments "based on injuries caused by ionizing radiation emitted by radars" in the mass tort case was linked to its statement that "future individual adjudications may result in more manageable choice-of-law and predominance inquiries." *Id.*

Primarily, the *Castano* and *Norwood* courts were concerned that certification was not appropriate when test cases had not gone forward to flesh out matters of causation determinations under various state laws. Here, there is one Texas statute that the court must interpret to adjudicate the claims for a group of Texans that resided at apartment complexes and paid fees pursuant to a particular late fee scheme over a relatively short time period. There is no

16

conflict of laws, there is no causation determination to be made, and there is no variation in type of injury. The concerns of *Norwood* and *Castano* are not present in this case.

In sum, the factors set forth in Rule 23(b)(3), taken as a whole, demonstrate that Plaintiffs have established the superiority of a class action in this matter and Defendants have raised no concern that otherwise defeats superiority.

### D. Ascertainability

"It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBramaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)(declining to certify a class of "residents of this State active in the peace movement"). "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite" of Rule 23. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)(citations omitted). Rule 23 requires that an *identifiable* class must exist, and a class is identifiable if its members can be ascertained by reference to objective criteria. *Id.*; *see also Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012)(citations omitted).

Over the six months preceding the March 1 hearing, the parties expended significant effort in discovery as to the ascertainability of the putative class, specifically to explore the capabilities of the Yardi Voyager software and its underlying database in revealing which of Defendants' tenants or former tenants may be putative class members. *See* Dkt. #129 at 7 ("The parties collectively disclosed seven experts on these issues, each of whom has now been deposed."). As a result, there is now significant clarity in the record before the court on this issue.

Plaintiffs propose a class made up of "[a]ll persons during the Class Period who (i) were residential tenants of apartment properties in the State of Texas under written leases where MAA or its predecessor in merger, Colonial, served as an owner or landlord, and (ii) were assessed and paid an initial rent late fee of $75.00 and/or a daily rent late fee of at least $10.00." The Class Period is defined by Plaintiffs as June 29, 2012 through September 30, 2017, and has certain exclusions, e.g., the court and its staff, persons who abandoned their MAA apartment units, etc.

Defendants use data management software called Yardi Voyager. Yardi Voyager sits atop a standard Microsoft SQL database that can be directly queried "behind the tenant ledger." According to Plaintiffs' experts it can "accurately portray, on a complex-wide or statewide basis, all rent late fee charges, and the payments or credits offsetting those charges, for a particular tenant" without resorting to an individual tenant-by-tenant review of the tenant ledger displayed through Yardi Voyager's out-of-the-box capabilities. This is possible because late fees are coded using one of three late fee codes, and because waived late fees and receipts of late fees are also tracked within the system.

Nevertheless, Defendants argue that Plaintiffs have not alleged an identifiable class, contending that Yardi Voyager and its underlying database cannot reveal "who actually paid" a late fee nor "yield sufficient accuracy to determine whether an assessed late fee was actually paid." Dkt. #129 at 10. Put differently, Defendants urge the court not to certify the proposed class because some putative class members' payment sources may be unclear. Also, they believe their own business data is not accurate due to potential manual entry errors, and therefore the data collected cannot reach an accuracy rate of 100%. They further argue that manual assessment would be more accurate than the Yardi extraction method proposed by Plaintiffs and explored during this extended discovery period, and that therefore the class is not ascertainable. Finally,

they cite the inability of Yardi to reveal which MAA tenants that might otherwise be part of the putative class are excluded due to eviction or bankruptcy as a reason why Plaintiffs' proposed class is ascertainable.

Simply put, Defendants arguments are not compelling. Defendants' own IT employee Altig confirms that the data is available to show receipts or charges allocated against an existing charge. Pl. Ex. 56. Further, testimony confirms that the data necessary to confirm charges and payments is stored by Yardi Voyager and its underlying database and can be extracted in bulk. *See* Pl. Ex. 52 at 187:9-21; Pl. Ex. 53 at 194:15-24, Pl. Ex. 50 at 230:3-22, and Pl. Ex. 51 at 192:11-196:8. Further, Defendants' exclusion concerns are not compelling: tenants who would otherwise be members of the class but who were evicted, declared bankruptcy, or signed releases can be easily identified and excluded. The proposed class meets the ascertainability standard.

### III. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion for Class Certification (Dkt. # 126).

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party

from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED May 22, 2018.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE