IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CATHI CLEVEN, TARA CLEVEN, ARELI ARELLANO, *and* JOE L. MARTINEZ, *for themselves and all others similarly situated*, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:16-CV-820-RP |
| MID-AMERICA APARTMENT COMMUNITIES, INC., *as General Partner of* MID-AMERICA APARTMENTS, LP; MID-AMERICA APARTMENTS, LP, *Individually and as General Partner of* CMS/COLONIAL MULTIFAMILY CANYON CREEK JV LP; *and* CMS/COLONIAL MULTIFAMILY CANYON CREEK JV LP, | § § § § § § § § § § § | |
| Defendants. | § § | |

## <u>ORDER</u>

Before the Court is the report and recommendation of United States Magistrate Judge Mark

Lane on class certification. (R. & R., Dkt. 166). On February 8, 2018, Plaintiffs Cathi Cleven, Tara

Cleven, Areli Arellano, and Joe L. Martinez (collectively, "Plaintiffs"), filed an Opposed Motion for

Class Certification and Brief in Support, (Dkt. 126) ("the Motion"), which this Court referred to

Judge Lane. Defendants Mid-America Apartment Communities, Inc.; Mid-America Apartments, LP;

and CMS/Colonial Multifamily Canyon Creek JV LP (collectively, "Defendants") filed a Brief in

Opposition on February 18, 2018, (Dkt. 129). Plaintiffs filed a reply, (Dkt. 132), and a Brief on

Evidence in Support of the Motion, (Dkt. 141).

Judge Lane held a motions hearing on class certification on March 1, 2018. (Mot. Hr'g Tr.,

Dkt. 161). Plaintiffs filed a sealed post-hearing brief, (Dkt. 146), and Defendants filed a response to

that brief, (Dkt. 151).

1

On May 5, 2018, pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local

Rules of the United States District Court for the Western District of Texas, Judge Lane issued a

report and recommendation that this Court grant Plaintiffs' Motion for Class Certification. (R. & R.,

Dkt. 166). Defendants filed timely objections. (Defs.' Obj., Dkt. 171).  The parties are therefore

entitled to de novo review of the portions of the report to which Defendants object. 28 U.S.C.

§ 636(b)(1)(C); Fed. R. Civ. P. 72(b).


## I.      BACKGROUND

This case concerns apartment late fees. Plaintiffs are current and former tenants of

Defendants' residential apartment communities throughout Texas. They allege that Defendants' late

fee policy violates Texas Property Code § 92.019 ("Section 92.019"). (Second Am. Compl., Dkt.

36). Defendants are Mid-America Apartment Communities Inc. and Mid-America Apartments, LP,

(together, "MAA") and MAA's predecessor in interest, CMS/Colonial Multifamily Canyon Creek

JV LP ("Colonial") (collectively, "Defendants").[1] MAA and Colonial merged in 2013. (Form 10-K,

Dkt. 126-22). Prior to the merger, MAA and Colonial applied different late fee structures. (Second

Am. Compl., Dkt. 36 ¶ 21–24; Defs.' Obj., Dkt. 171, at 3–4). Prior to the merger, MAA generally

charged late fees according to a $50/$10 structure for tenants who paid rent late, which applied a

$50 initial fee and an added $10 fee for each additional day late. (Ellsberry Dep., Dkt. 126-13, at 11).

Colonial typically charged a similar $75/$10 late fee structure, with $75 as the initial late fee and a

set fee of at least $10 for each additional day late ("the $75/$10 fee"). (*Id.*). These late fee policies

were largely uniform across Texas for each company immediately prior to the merger. (*Id.*; Defs.'

Obj., Dkt. 171-2, at 3–4.). After the 2013 merger, Defendants harmonized the late fee policy

---

[1] In a companion case, *Brown v. Mid-America Apartment Communities, et al.*, No. 1:17-CV-307-RP (W.D. Tex. filed Apr. 10, 2017), another group of plaintiffs allege that different MAA properties, acquired in its merger with Post Apartment Homes, LP, violate the same Texas statute by charging a fixed late fee equal to 10% of the tenant's monthly rent.

according to the $75/$10 fee structure across all of their Texas properties. (*See* Defs.' Obj., Dkt. 171-2, at 3–4). If a tenant failed to pay their rent by the third day of the month, Defendant's property management software Yardi Voyager automatically assessed the fee shortly after midnight on the fourth of the month. (Ellsberry Dep., Dkt. 126-13, at 16).

Plaintiffs seek class certification for their claims that MAA and Colonial charged them late fees in violation of Texas Property Code § 92.019, which provides that "a landlord may not charge a tenant a late fee for failing to pay rent unless . . . the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent." (Mot., Dkt. 126; Second Am. Compl., Dkt. 36 (citing TEX. PROP. CODE § 92.019(a)(2))). The statute further provides: "A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees." *Id.* at § 92.019(c). The statute invalidates any lease term "that purports to waive a right or exempt a party from a liability under this section." *Id.* at § 92.019(d).

Plaintiffs allege that there is no evidence that Defendants ever estimated the damages resulting from late-paid rent as required under the statute before they assessed a late fee against any putative class member. (Mot., Dkt. 126, at 6). Defendants counter that testimony from a former MAA executive demonstrates that Defendants "considered numerous factors in setting MAA's late fee." (Defs.' Obj., Dkt. 171, at 5 (citing Mot. Hr'g., Dkt. 161, at 128–133, 143–144) (Testimony of James Maclin)).

Plaintiffs seek to certify the following class, for a class period from June 29, 2012, to September 20, 2017 ("the proposed class"):

> All persons during the Class Period who (i) were residential tenants of apartment
> properties in the State of Texas under written leases where MAA or its predecessor

in merger, Colonial, served as an owner or landlord, and (ii) were assessed and paid an initial rent late fee of $75.00 and/or a daily rent late fee of at least $10.00.[2]

(Mot., Dkt. 126, at 3).[3] Plaintiffs estimate that this proposed class would number in the thousands. (*Id.*, at 10, 17).

Plaintiffs Cathi and Tara Cleven brought the original action on behalf of themselves and all others similarly situated. (Compl., Dkt. 1, at 1). Plaintiffs' Second Amended Complaint added Areli Arellano and Joe L. Martinez as additional class representatives. (Second Am. Compl., Dkt. 36). All plaintiffs are current or former tenants of Defendants, and all signed standard Texas Apartment Association ("TAA") form leases which expressly provided for the $75/$15 or $75/$10 late fee structure above. (Pls.' Leases, Dkt. 126-5, -6, -10, -11). Each has been charged and paid a late fee through the Defendants' Yardi Voyager software. (Pls.' Decl. and MAA Resident Ledgers, Dkts. 126-1, -2, -7, -8, -9, -12).[4] Defendants deposed each of the four named Plaintiffs prior to the class certification hearing. (*See* Defs.' Resp., Dkt. 129; Defs.' Obj., Dkt. 171). Each of the four named Plaintiffs attended a portion of the class certification hearing. (Pls.' Reply, Dkt. 172, at 17).

## II.   LEGAL STANDARD

For class certification, Plaintiffs must satisfy Rule 23(a): (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims or defenses of the representative parties must be "typical of the claims

---

[2] "The Class excludes the following persons: the judge(s) assigned to this case and his or her staff; governmental entities; MAA and Colonial and their affiliates; persons adjudged to be bankrupt during the class period; persons who previously released MAA of the claims raised by this case; and persons who abandoned their MAA apartment units without paying rent or who were evicted by MAA for nonpayment of rent." (Mot., Dkt. 126, at 3 n.9).

[3] The Court notes that this proposed class differs slightly from the proposed class definition in the Amended Complaint. (*Compare* Second Am. Compl., Dkt. 36, at 17). The Court bases its analysis on this amended definition.

[4] Plaintiffs note that, in one instance, Defendants assessed an initial late fee plus the daily late fee against the Clevens, but waived the $75 base fee while charging only the additional daily fees. (Pls.' Decl., Dkt. 126-1–2).

or defenses of the class"; and (4) the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Additionally, "a plaintiff must also demonstrate that a proposed class satisfies one of the criteria articulated in Fed. R. Civ. P. 23(b)." *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017). Plaintiffs in this case seek certification under Rule 23(b)(3), which requires them to demonstrate that "the questions of law or fact common to the class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, the Fifth Circuit has interpreted Rule 23 to include an implied prerequisite that the proposed class must be ascertainable. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Plaintiffs have the burden of showing that each of the Rule 23 requirements are met. *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 76 (2017) ("[A] plaintiff seeking to certify a class 'must affirmatively demonstrate his compliance' with Rule 23.") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

A district court "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Yates,* 868 F.3d at 362 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)); *see also Wal-Mart*, 564 U.S. at 350–51. This requires a court to "'look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination.'" *Yates,* 868 F.3d at 362 (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)); *see also Wal-Mart*, 564 U.S. at 350–51.

## III.   DISCUSSION

The magistrate judge determined that Plaintiffs have satisfied each requirement of Rule 23, and recommended that this Court grant Plaintiffs' motion for class certification. (R. & R., Dkt. 166). Defendants object that the magistrate judge erred in finding that Plaintiffs have satisfied the

requirements for class certification. (Defs.' Obj., Dkt. 171). Because Defendants timely objected to the report and recommendation, they are entitled to de novo review for each part to which they object.

Having conducted a de novo review of the parties' submissions, the record, and applicable law, the Court agrees with the magistrate judge's factual findings and legal conclusions, and adopts the report and recommendation in its entirety. In adopting the magistrate judge's report and recommendation in full, the Court has considered and overruled each of Defendants' objections. The Court will address each requirement for class certification in turn.

### A. Numerosity

Numerosity is the sole component of the report and recommendation to which Defendants do not object.  (*See* Defs.' Obj., Dkt. 171).[5] There being no objections to this portion of the magistrate judge's report and recommendation, the Court reviews the numerosity analysis for clear error and finds none. Thousands of proposed class members, (*see* Mot., Dkt. 126, at 10–17), far exceeds the range that generally satisfies the numerosity requirement in the Fifth Circuit. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). The Court finds that the proposed class in this action is so numerous that joinder of all members is impracticable, establishing numerosity.

### B. Commonality

Next, Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). The Supreme Court decision in *Wal-Mart* "heightened the standards for establishing commonality." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012) (citing *Wal-Mart*, 564 U.S. at 349–51). While "any competently crafted class complaint literally raises common questions," commonality goes further and "requires the plaintiff to demonstrate that the class members have

---

[5] The magistrate judge also noted that Defendants have previously represented at a hearing that they do not dispute numerosity. (R. & R., Dkt. 166, at 5).

suffered the same injury." *Id.* (citing *Wal-Mart*, 564 U.S. at 350–51) (internal quotation marks omitted). It is not enough that all class members "alleg[e] a violation of the same legal provision by the same defendant." *Id.*

To establish commonality, plaintiffs must show that "'[t]heir claims depend upon a common contention,' and the common contention 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke.*'" *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350) (emphasis added). If the prospective class can meet this standard, "[e]ven a single common question will do." *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 358) (internal quotation marks omitted).

Here, Plaintiffs assert two common questions for classwide resolution: "(1) Did Defendants estimate their damages prospectively before contracting for the late fees? (2) If yes, were the late fees charged 'a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent'" as required under Texas Property Code § 92.019(a)(2)? (Mot., Dkt. 126, at 18).

Plaintiffs assert that "the theory of recovery asserted by the proposed class does not depend on any individual issues," because the legality of Defendants' uniform policy will determine Defendants' liability for all proposed class members. (*Id.*) In support, Plaintiffs have presented evidence that all prospective class members were subject to and charged under the same late fee policy. (*Id.*). They have presented evidence that Defendants used standard form leases with the same late fee policy for all tenants and that Defendants used an automated property management system known as Yardi Voyager for all of their Texas properties. (*Id.* at 7).

Defendants counter that commonality fails here because "the only way to determine . . . class membership, damages, and other aspects of Plaintiff's claims is to conduct a tenant-by-tenant review." (Defs.' Resp., Dkt. 129, at 14). Defendants argue that because the magistrate judge "reconiz[ed] issues that are not 'common' between Plaintiffs," this should defeat commonality. (Defs.' Obj., Dkt. 171, at 18). But the existence of some factual differences among class members will not defeat commonality if there is at least a single common question that "'will resolve an issue that is central to the validity of each one of the claims *in one stroke*.'" *Ahmad*, 690 F.3d at 702 (quoting *Wal-Mart*, 564 U.S. at 350). The Court agrees with magistrate judge that "the fact that class administration details and damages may be somewhat unique does not disturb the conclusion that Plaintiffs have established commonality." (R. & R., Dkt. 166, at 7). "Even a single common question will do." *In re Deepwater Horizon*, 739 F.3d at 811 (quoting *Wal-Mart*, 564 U.S. at 358) (internal quotations omitted).

Defendants also object that the magistrate judge "fail[ed] to identify a 'common contention' or 'single question of law or fact' that is 'common to the members of the class.'" (Defs.' Obj., Dkt. 171, at 18). They are mistaken. The magistrate judge expressly agreed with Plaintiffs that "[w]hether that uniform scheme was lawful is the central question to the validity of each putative class member's claims." (R. & R., Dkt. 166, at 7). Defendants argue that "[w]hile that may or may not be a 'common' question, the problem is that it has little to do with Plaintiffs' claims." (Defs.' Obj., Dkt. 171, at 18–19). This is another inaccurate characterization. Plaintiffs' common question is central to their claim for relief: that Defendants "charged Class members excessive and prohibited late fees for rent in violation of Texas law." (Second Am. Compl., Dkt. 36, ¶ 49).

The Court finds that Plaintiffs have satisfied the commonality requirement by raising at least one question common to the class: whether Defendant's uniform, fixed late rent fee—which was applied automatically to all tenants in their Texas properties—violates the Texas Property Code's

requirement that any late fee "is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent." TEX. PROP. CODE § 92.019(a)(2). Answering this question will determine the validity of all proposed class members' claims "in one stroke." *See Ahmad*, 690 F.3d at 702 (quoting *Wal-Mart*, 564 U.S. at 350).

## C. **Typicality**

The third requirement of Rule 23(a) is that the representative parties' claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). The "commonality and typicality requirements of Rule 23(a) tend to merge." *In re Deepwater Horizon*, 739 F.3d at 827 (quoting *Wal–Mart*, 564 U.S. at 349 n.5).

Typicality requires that "'the class representative's claims have the same essential characteristics of those of the putative class." *Villagran v. Cent. Ford, Inc.*, 524 F. Supp. 2d 866, 883 (S.D. Tex. 2007) (quoting *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001)). "'If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *Id.*

Plaintiffs state that "the claims of the proposed class are 'exactly the same.'" (Mot., Dkt. 126, at 19) (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (affirming typicality where "the proposed class members' legal and remedial theories appear to be exactly the same")). Defendants object that Plaintiffs cannot establish typicality because "completely distinct evidence" is required to prove their liability "for certain members of the putative class versus other members." (Defs.' Obj., Dkt. 171, at 19).[6] Defendants argue, for example, that some potential class

---

[6] *See* Deft.'s Obj., Dkt. 171, at 20 (citing *Villagran*, 524 F. Supp. 2d at 883 ("To the extent that Villagran seeks to represent a class whose members received 'similar,' but not 'identical' mailings [from creditor], she has failed to show how her claim is typical of the claims of class members who received different mailings."); *Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 201 (W.D. Tex. 2004) ("[B]ecause the proof of Plaintiffs' claims and defenses thereto will be dominated by individual evidence, Plaintiffs' certification motion does not satisfy Rule 23(a)(3)'s typicality requirement.") (citations omitted); *Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 240 (W.D. Tex. 1999) (Finding no typicality in an employment discrimination case where promotion and training decisions would be "by their very nature, individually tailored and thus not 'typical' for all class members").

members may have been subject to either a $50 fee or a $75 fee prior to the MAA-Colonial merger. (*Id.*). Throughout the class period, some potential class members may have had part of their late fees waived. (*Id.*).

Defendants' objections fail because Plaintiffs have established that their claims arise from a similar course of conduct by Defendants. "'If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *Villagran*, 524 F. Supp. 2d at 883 (quoting *James*, 254 F.3d at 571).

The Court finds that Plaintiffs have established typicality because their claims arise from a similar course of conduct—Defendants' process of setting their late fees—and share the same legal theory that Defendants failed to set that fee in accordance with Texas Property Code § 92.019. Moreover, as in *Mullen*, the proposed class members' legal and remedial theories are exactly the same. *See Mullen*, 186 F.3d at 625. All proposed class members claim that Defendants charged them late fees that were not "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent" as required under Texas Property Code § 92.019, and accordingly seek to recover statutory damages. (Mot., Dkt. 126; Second Am. Compl., Dkt. 36).

### D. **Adequacy**

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In the Fifth Circuit, "the adequacy requirement mandates an inquiry into (1) the zeal and competence of the representatives' counsel and . . . (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)

(alterations omitted)).[7] As with all Rule 23(a) requirements, the party seeking certification bears the burden of establishing adequacy. *Berger*, 257 F.3d at 481.

    1.  <u>Representatives' Counsel</u>

    Counsel for Plaintiffs have significant experience litigating and settling class actions, including tenant class actions regarding water and late fees. (*See, e.g.,* Weber Decl., Dkt. 126-36; Monts Decl., Dkt. 127-13, at 23). Throughout these proceedings, counsel have demonstrated to the magistrate judge and to the undersigned that they possess "the requisite zeal and competence" to fairly and adequately protect the interests of the class under Rule 23(a). (*See* R. & R., Dkt. 166, at 9).

    Defendants have repeatedly alleged that Plaintiffs' counsel improperly solicited Ms. Arellano and Mr. Martinez class representatives. (*See* Defs.' Resp., Dkt. 129, at 6–7; Defs.' Obj., Dkt. 171, at 15–17). Defendants allege that Plaintiffs' counsel "trolled the internet" and contacted Ms. Arellano after reading her complaint on Yelp regarding MAA's dog breed policy. (Defs.' Resp., Dkt. 129, at 6).[8] Defendants object that this constitutes improper solicitation of Ms. Arellano and Mr. Martinez as clients. Plaintiffs counter that counsel for the Clevens discovered Ms. Arellano's post on Yelp while counsel were "investigat[ing] the factual basis for the claims denied by the Defendants," and that Ms. Arellano and her partner Mr. Martinez were initially contacted as potential witnesses, only becoming parties after they decided to pursue that role. (Mot., Dkt. 126, at 21). Plaintiffs also note that the first pair of class representatives, the Clevens, were referred to Mr. Monts by his brother, who is a friend and coworker of Cathi Clevens. (*Id.* at 20–21).

---

[7] Although *Berger* held that the Private Securities Litigation Reform Act "raises the standard adequacy threshold" in securities fraud class actions, *id.* at 483, the Fifth Circuit made clear in *Berger II* that this did not "change the law of this circuit regarding the standard for conducting a [R]ule 23(a)(4) adequacy inquiry" in any other type of class actions. *Berger v. Compaq Computer Corp.*, 279 F.3d 313 (5th Cir. 2002) (per curiam).

[8] In her deposition, Ms. Arellano testified: "Mr. Monts [Counsel for Plaintiffs] sent me an e-mail regarding if I had any experience with late fees with the property and he was looking for—he had a pending case and he wanted to know if we had any experience with that. And I called him because we had. We've had several late fees that we had paid and we had —I wanted to know more information. I didn't know that there was something we could do about it." (Arellano Dep., Dkt. 129-4, at 36).

The Court is not persuaded that Plaintiffs' counsel improperly solicited Ms. Arellano and Mr. Martinez. Moreover, the Court is not persuaded that any alleged solicitation would undermine counsel's "requisite zeal and competence" under Rule 23(a), or the ability of Ms. Arellano and Mr. Martinez to fairly and adequately protect the interests of the class now that they have chosen to serve as class representatives. Defendants cite just one case in support of this objection, *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 535 (N.D. Tex. 2005), where the court listed solicitation as one of several factors that "tend to weigh against a finding of adequacy." The court found Ogden was "not a suitable representative for the putative class" because, among many factors, she "[could] not state how she was harmed" by the defendants' actions and she could not state "any facts supporting her allegation[s]" against one of the defendants.[9] This is not comparable to the plaintiffs in this case, who can clearly articulate how they have been harmed and the legal basis for this action. (*See* Arellano Dep., Dkt. 126-44; Martinez Dep., Dkt. 126-45).

This Court concludes that even if Plaintiffs' counsel did solicit Ms. Arellano and Mr. Martinez, this is outweighed by counsel's zeal and competence as demonstrated throughout the proceedings before this Court. Even if solicitation were fatal to a plaintiff's participation in a class, Cathi and Tara Cleven would remain to serve as class representatives. The Court finds that Plaintiffs' counsel has the necessary "zeal and competence" to fairly and adequately protect the interests of the class under Rule 23(a).

2. <u>The Class Representatives</u>

All four proposed class representatives "earnestly seek to remedy what they believe to be a wrong and have a laypersons' understanding of the claims they are asserting and their duties as class

---

[9] "Completely missing is her knowledge of even one fact to support her assumption that T. Rowe Price was involved with, had some control over, or had knowledge of AmeriCredit's accounting practices and the resulting fluctuation to Ogden's plan assets." *Ogden*, 225 F.R.D. at 534.

representatives." (Mot., Dkt. 126, at 20; Pls.' Decls., Dkts. 126-1, -2, -8, -9; Pls.' Deps., Dkt. 126-44, -45, -46, -47).

Defendants object that certification based on the proposed class representatives "would reduce Rule 23(a)(4) to utter meaninglessness." (Defs.' Obj., Dkt. 171, at 15). They argue that the plaintiffs "(1) were solicited by counsel; (2) did not know either of the claims or the definition of the proposed class; (3) did not review either the complaint or the engagement letter; (4) had their counsel draft their declarations; and (5) did not testify at the class certification hearing." (*Id.*).

The Court is not persuaded that all of these factual allegations are true, or that any would defeat adequacy in this action. As noted above, the Court rejects Defendants' solicitation argument. Regarding Defendants' assertions that Plaintiffs do not understand this legal action, have not reviewed key filings, and have not participated as appropriate throughout these proceedings, this Court entirely agrees with the magistrate judge: "a review of the complete deposition selections provided . . . in connection with this Motion reveal that those depositions have an entirely different timbre than Defendants would have the court believe." (R. & R., Dkt. 166, at 9). Plaintiffs indeed have a layperson's understanding of the law and their claims that is adequate for them to represent the proposed class. (*See* Pls.' Decls., Dkt. 126-1, -2, -8, -9; Pls.' Deps., Dkt. 126-44, -45, -46, -47). The Fifth Circuit has made clear that "class representatives need not be legal scholars and are entitled to rely on counsel." *Berger*, 257 F.3d at 483 (quoting *Kelley v. Mid–America Racing Stables, Inc.*, 139 F.R.D. 405, 410 (W.D. Okla. 1990)).

There is also no evidence before the Court of any differences between the named plaintiffs and the potential class members that could create any conflict of interest with the proposed class. *See Mullen*, 186 F.3d at 625–26 ("Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests.")

Accordingly the Court finds that all four proposed class representatives exhibit a "willingness and ability . . . to take an active role in and control the litigation and to protect the interests of absentees," satisfying the adequacy requirement of Rule 23(a). *See Berger*, 257 F.3d at 479.

The Court concludes that Plaintiffs have met the adequacy requirement, satisfying the final requirement for class certification under Rule 23(a). Because Plaintiffs seek to certify a class under Rule 23(b)(3), the Court next considers whether Plaintiffs have satisfied the additional requirements of predominance and superiority.

### E.  Predominance

Rule 23(b) imposes two further requirements for class certification. First, a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "requires the court to assess how the matter will be tried on the merits, which 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010) (quoting *O'Sullivan v. Countrywide Home Loans*, 319 F.3d 732, 738 (5th Cir. 2003)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations omitted). The predominance inquiry asks whether common issues are "more prevalent or important" than the non-common individual issues. *Id.* At its core, the predominance requirement "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by [class] representation." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

14

Plaintiffs submit that their common questions predominate over individual ones because their "sole claim for relief . . . turns on questions susceptible to class-wide proof." (Mot., Dkt. 126, at 24). They argue that their common legal question may be decided in "one stroke" by resolving "whether Defendants' admitted-to practice of charging all Class Members a $75/$10 rent late fee under a uniform scheme violated . . . Section 92.019." (*Id.* at 25). This common legal question turns on two common questions of fact: (1) whether Defendants estimated their damages prospectively before contracting with the proposed class members, and (2) if so, whether that estimate was "a reasonable estimate of uncertain damages" under Section 92.019. (*Id.*).

Defendants object to predominance on several grounds. First, Defendants argue that their liability under the statute requires an individualized inquiry of law and fact for each tenant-plaintiff, which predominates over any classwide question. (Defs.' Obj., Dkt. 171, at 12–15). For example, Defendants suggest, "Was the initial or any daily late fee waived? Did the tenant or landlord have a counterclaim against the other? Does the landlord have defenses to the tenant's claim of statutory non-compliance?" (Defs.' Obj., Dkt. 171, at 12).

None of Defendants' questions defeat predominance. First, Defendants fail to acknowledge that the class definition resolves many of these alleged individual questions. For example, the proposed class only includes tenants who were charged a late fee and paid it. (Mot., Dkt. 126, at 3). If Defendants charged a tenant a late fee but later waived it before the tenant paid the fee, that tenant is not part of the class. Regarding possible individual counterclaims or defenses, the Court agrees with the magistrate judge that "the plain language of the statute suggest[s] that such defenses and counterclaims are not permissible." (R. & R., Dkt. 166, at 13).[10] More importantly, Defendants have not identified any plausible individual defenses or counterclaims which could potentially predominate over the classwide question of the legality of the late fees. In their briefing on this

---

[10] Section 92.019(d) states: "a provision of a lease that purports to waive a right or exempt a part from a liability or duty under this section is void." TEX. PROP. CODE § 92.019(d).

motion, Defendants have not identified any specific defenses or counterclaims which might actually predominate, other than listing hypothetical ones. (*See* Defs.' Obj., Dkt. 171, at 12). Although Defendants have filed a counterclaim for breach of contract against the proposed class representatives, (Answer and Countercl., Dkt. 103, ¶16), this counterclaim does not predominate because it is not "more prevalent or important" than the common question of Defendants' liability for their late fees.[11] *Tyson Foods*, 136 S. Ct. at 1045. Moreover, in Defendants' motion for summary judgment, their own theory of the case is entirely based on common evidence. (*See* Defs.' Mot. Summ. J., Dkt. 204).[12] The Court rejects Defendants' objection that individualized issues for each tenant-plaintiff would predominate over classwide liability under the statute.

Defendants next object that the magistrate judge failed to determine whether Section 92.019 requires an "individualized" estimate of damages before charging a late fee for each tenant, and overlooked Plaintiffs' failure to articulate "exactly how they believe landlords should comply with § 92.019." (Defs.' Obj., Dkt. 171, at 12). But this is not an accurate characterization of the magistrate judge's reasoning or Plaintiffs' submissions. Plaintiffs state in their motion for class certification: "Landlords must estimate their late payment damages before adding a late fee clause to a lease, and failure to do so is a per se violation [of Section 92.019]." (Mot., Dkt. 126, at 15). They also state: "Section 92.019(a)(2) requires an estimate of uncertain damages *that must occur prospectively*." (*Id.* (emphasis added)). The magistrate judge agreed with this reading of the statute, explaining that the court need not reach the merits of whether an individualized assessment is necessary because "the

---

[11] Breach of contract is also not a plausible defense in this case. Section 92.019 predicates liability on a late fee being charged pursuant to a written lease. TEX. PROP. CODE § 92.019(a)(1). The statute therefore only applies when a tenant has breached his or her lease and when the tenant consented to the late fee provision by agreeing to the lease. If breach of contract were an applicable defense, it would apply in every instance that a landlord would be liable under Section 92.019 and the statute would be meaningless.

[12] Defendants' arguments on the merits confirm that they advocate a construction of Section 92.019 under which a late fee's reasonableness is determined not by the quality of a landlord's prospective estimation of its future damages, but instead by the degree to which the late fee ultimately approximates the landlord's actual damages. (*See* Defs.' Mot. Summ. J., Dkt. 204, at 23–27).

evidence before the court at this stage suggests that Defendants never engaged in *any* reasonable estimate of damages." (R. & R., Dkt. 166, at 12 (emphasis added)).

This Court agrees. At this stage, Defendants have not introduced any evidence that they conducted an individualized estimate to set the late fee provision in each proposed class member's lease. The late fee was set according to a standard policy. (Mot., Dkt. 126, at 3; Defs.' Obj., Dkt. 171, at 9). Whether Defendants set their standard late fee according to an estimate will be true for every proposed class member, or for none of them.

Defendants object that the magistrate judge overlooked specific evidence that MAA did conduct an estimate before setting the fee. (Defs.' Obj., Dkt. 171, at 10, 12–13; Mot. Hr'g Tr., Dkt. 161, at 128–33, 143–44 (Maclin testimony)). Defendants appear to contend that Mr. Maclin's testimony proves compliance with the statute, thus precluding any common issue of law or fact to establish predominance for a classwide claim. However, even assuming that Defendants did estimate average damages before imposing a the uniform late fee for all tenants, and further assuming that this established compliance with Section 92.019, this again demonstrates that the central dispute in this case is "susceptible to generalized, class-wide proof," *Tyson*, 136 S. Ct. at 1045, and the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" *Crutchfield*, 829 F.3d at 376 (quoting *Amchem*, 521 U.S. at 623). The class "will prevail or fail in unison." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013). The Court concludes that Plaintiffs have raised questions of law and fact common to class members that predominate over any questions affecting only individual members, satisfying predominance under Rule 23(b)(3).

### F.  Superiority

Rule 23(b)(3) also requires a court to find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under this Rule, "matters pertinent to these findings" are (a) "the class members' interests in individually

controlling the prosecution or defense of separate actions"; (b) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (c) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (d) "the likely difficulties in managing a class action." *Id.* The Fifth Circuit has observed that "this list is not meant to be exhaustive and the court has discretion to consider whatever other factors it deems relevant to the determination." *In re TWL Corp.*, 712 F.3d 886, 895–96 (5th Cir. 2013) (citing 7AA Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1777 (3d ed. 2005)). Superiority is "necessarily . . . a comparative process" of evaluating whether the class mechanism is preferable to individual litigation by class members. *In re TWL Corp.*, 712 F.3d at 896 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)). "The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 749 n.27 (5th Cir. 1996) (citation and quotation marks omitted).

Here, in particular because Plaintiffs have established a common question that is central to Defendants' liability for potentially thousands of class members, the Court finds that "economies of time, effort, and expense" weigh strongly in favor of a class action over thousands of repetitive individual trials. Even damages in this case would be determined by statute. *See* TEX. PROP. CODE § 92.019(c). The Court has not seen any reason why individual class members would have an interest in "individually controlling the prosecution . . . of separate actions." Fed. R. Civ. P. 23(b)(3).

Defendants object that this is not a "negative value" case in which the cost of litigating exceeds the value of a successful claim. (Defs.' Obj., Dkt. 171, at 10). Defendants rely on *Ticknor v. Rouse's Enterprises, L.L.C.*, 592 F. App'x 276 (5th Cir. 2014), which recognized that "the availability of attorney's fees and punitive damages is a common basis for finding non-superiority, as the aggregation of claims is not necessary to facilitate suits in such instances." 592 F. App'x at 279

18

(citations omitted). Although Defendants are correct that aggregation of claims is not strictly necessary for the plaintiffs in this case to recover, *Ticknor* made clear that this is only one of many factors which a district court may consider in analyzing superiority. The availability of attorney's fees and punitive damages is "a common basis" to find against superiority, but it is not dispositive. The Fifth Circuit concluded in *Ticknor*: "Critically important here is the broad discretion enjoyed by district courts regarding certification." *Ticknor*, 592 F. App'x at 279. This discretion "may lead to disparate results" regarding class certification even in similar cases. *Id.*; *see also Sistrunk v. TitleMax, Inc.*, No. SA14CA628RPHJB, 2016 WL 9450445, at *9 (W.D. Tex. Aug. 26, 2016), *report and recommendation approved*, No. 5:14-CV-628-RP, 2016 WL 9450689 (W.D. Tex. Nov. 16, 2016) (certifying a class post-*Ticknor* despite the availability of attorney's fees when other factors counseled in favor of finding superiority).

Defendants also object that this case presents "novel claims" which preclude superiority. (Defs.' Obj., Dkt. 171, at 12–14). They cite *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 738 (5th Cir. 1996), which reversed certification where plaintiffs' claims raised "a new theory of liability." (*Id.*). Defendants argue that this case raises a new theory of liability because "'there is no case law interpreting the statute at all.'" (Defs.' Obj., Dkt. 171, at 1 (quoting R. & R., Dkt. 166, at 12)). In *Castano*, the Fifth Circuit held:

> The plaintiffs' claims are based on a new theory of liability and the existence of new evidence. Until plaintiffs decide to file individual claims, a court cannot, from the existence of injury, presume that all or even any plaintiffs will pursue legal remedies. Nor can a court make a superiority determination based on such speculation.

*Castano*, 84 F.3d at 747–48. Defendants ask the Court to take from that language the global proposition that a lack of prior individual-claim litigation weighs against finding superiority. (Defs.' Obj., Dkt. 171, at 12).

But Defendants distort the magistrate judge's application of *Castano*.[13] As the magistrate judge correctly observed, *Castano* was multistate mass tort case that raised complex questions of jurisdiction and causation—factors which are not present here. (*See* R. & R., Dkt. 166, at 16). *Castano* proceeded on a "wholly untested" theory of liability for nicotine addiction involving a nationwide class. *Castano*, 84 F.3d at 737–38. The *Castano* plaintiffs asserted "eight theories of liability from every state," and the district court had to determine whether variations in state law defeated predominance. *Id.* at 750. Here, the proposed class definition is limited to Texas tenants, who were charged and actually paid the challenged late fees. (Mot., Dkt. 126, at 3). Although there are thousands of potential class members, there are no complex questions of causation, jurisdiction, or liability here that compare to a mass personal injury class action like *Castano*.[14]

Defendants also object that the magistrate judge failed to analyze how the case would be tried. (Defs.' Resp., Dkt. 171, at 10–11). In evaluating superiority, a district court must consider "'how a trial on the alleged causes of action would be tried.'" *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 425 (5th Cir. 2004) (quoting *Castano*, 84 F.3d at 752). In some cases, district courts must consider how a large plaintiff class may be managed. *Robinson*, 387 F.3d at 425.

Having considered Plaintiffs' proposed trial plan, (Pls.' Proposed Trial Plan, Dkt. 127-14), this Court is persuaded that a single action with multi-phase proceedings would be the simplest and most manageable way to address the issues in this case. As discussed elsewhere in this order and in the report and recommendation, Defendants' liability can be determined according to conduct that is common to each proposed class member. (*See id.* at 4–6). As the proposed trial plan sets out,

---

[13] Defendants attempt to argue that the magistrate judge "limit[ed] *Castano* in such a way as to remove that case from superiority analysis." (Defs.' Obj., Dkt. 171, at 14).

[14] Other cases applying *Castano* to deny class certification based on "novel claims" have involved complex personal injury claims. *See Norwood v. Raytheon Co.*, 237 F.R.D. 581, 605 (W.D. Tex. 2006) (denying class certification for personal injury suit against designers, manufacturers, and marketers of radar equipment to recover for physical injuries resulting from exposure to x-ray radiation); *In re Norplant Contraceptive Prod. Liab. Litig.*, 168 F.R.D. 577, 578–79 (E.D. Tex. 1996) (denying class certification for products liability action against manufacturer of implanted birth control device).

common questions of fact—such as whether Defendants estimated their damages before they set the late fee—can be determined for the entire class through trial, if one is needed. (*Id.* at 4–5). The Court agrees with Plaintiffs that there are no individual disputes regarding causation, that Plaintiffs will rely primarily on common evidence from Defendants' property management software, and that "statutory remedies are automatic," thus avoiding the possibility of continued dispute at trial over damages. (*Id.* at 2–5 (citing TEX. PROP. CODE § 92.019(c)).[15] The Court also finds that the proposed plaintiff class can be identified and managed through data drawn from the Defendant's property management software, which Plaintiffs have already begun to prepare. (Pls.' Proposed Trial Plan, Dkt. 127-14, at 3 (citing Mot., Dkt. 126, at 1–3, 6–12; Selected Yardi Voyager Records, Dkt. 127-8, -9, -10, -11). The Court finds that Plaintiffs' proposed trial plan is persuasive evidence that class proceedings would be simpler and more efficient than a series of individual trials.

The Court concludes that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy, based on the desirability of concentrating the litigation of claims in a single forum and the difficulties likely to be encountered in the management of a class action. Based on the evidence before the Court at this stage, it appears that Defendants' liability will turn on questions of statutory interpretation and resolutions of fact disputes that are common to each proposed class member. Through the parties' considerable litigation of this case, the Court is familiar with the facts of Defendants' conduct that will be relevant to every proposed class member's claim. Through this litigation and other recent late-fee cases, this Court is familiar with the legal arguments relevant to Section 92.019.[16] Plaintiffs have satisfied the superiority requirement of Rule 23(b).

---

[15] The statute provides: "A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees." TEX. PROP. CODE § 92.019(c).

[16] *See* Complaint, *Brown v. Mid-American Apartments, LP, et al.*, 1:17-CV-307-RP (W.D. Tex. April 10, 2017); Complaint, *Dominguez v. Mid-American Apartment Cmtys., Inc., et al.*, 1:15-CV-293-RP (W.D. Tex. Apr. 17, 2015).

### G. <u>Ascertainability</u>

The final requirement for class certification is ascertainability. The Fifth Circuit has

interpreted Rule 23 to include an implied prerequisite that the proposed class must be ascertainable.

*See John*, 501 F.3d at 445; *see also DeBramaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (declining to

certify a class of "residents of this State active in the peace movement"). "An identifiable class exists

if its members can be ascertained by reference to objective criteria." *Conrad v. Gen. Motors Acceptance*

*Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012).

Plaintiffs submit that the class is easily and objectively identifiable by conducting

standardized searches in Defendants' property management software, Yardi Voyager, according to

the terms of the proposed class. (*See* Mot., Dkt. 126, at 13–14). The proposed class definition sets

out objective criteria limiting the searches, including dates and amounts charged and paid. (*Id.* at 3).

Defendants have disputed throughout these proceedings whether Yardi can produce

accurate records of late fees both charged and paid. (*See, e.g.*, Mot. Hr'g Tr., Dkt. 161). Defendants

object that "both parties' Yardi experts" testified that the system "does not capture data indicating

the identity of individuals who actually paid the assessed late fees," and that "the most accurate way

to determine payments and charges is a manual review." (Defs.' Obj., Dkt. 171, at 20 n.20).

Neither of these objections defeat ascertainability. First, a defendant may not avoid

certification of a class by arguing their business records are not efficiently organized and maintained.

*See In re Monumental Life Ins.*, 365 F.3d 408, 417, 419 (5th Cir. 2004) (finding data kept in "defendant's

normal course of business" sufficient to assess class-wide claims); *see also Mullins v. Direct Digital,*

*LLC*, 795 F.3d 654, 668 (7th Cir. 2015) ("refusing to certify on this basis effectively immunizes

defendants from liability because they chose not to maintain records of the relevant transactions").

Even so, Plaintiffs have presented persuasive evidence that Yardi Voyager can indeed produce bulk

data to confirm charges and payments for MAA's late fees. (*See* Vachhani Dep., Dkt. 127-24, at 59–

60; Jewell Dep., Dkt. 127-25, at 44; Nims Dep., Dkt. 127-26, at 48; Fein Dep., Dkt. 127-27, at 50).

Even if manual review were necessary to ascertain every member of the class, Plaintiffs have still

shown that the class is identifiable by objective criteria. Manual review does not preclude

ascertainability. *See, e.g., McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017), *reh'g denied (Oct. 4,*

*2017), cert. denied*, 138 S. Ct. 2026 (2018) (affirming ascertainability where the district court had

required counsel "to hire reviewers to manually inspect each of TMBC's customer files in order to

determine . . . the basis for the nationwide class."); *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003,

at *7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and

determine who is eligible . . . that work can be done through discovery."); *Mitchell-Tracey v. United*

*Gen. Title Ins. Co.*, 237 F.R.D. 551, 560 (D. Md. 2006) ("Although the task [of compiling claims data

for each class member] may prove to be a laborious one, this court is not persuaded that it is one

that cannot be reasonably managed."). The Court overrules Defendants' objections. Plaintiffs have

established ascertainability of their proposed class, and accordingly they have satisfied all

requirements under Rule 23(a) and (b) for class certification.


## IV.   CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Magistrate Judge Lane's report and

recommendation, (Dkt. 166), is **ADOPTED**. Plaintiffs' Motion for Class Certification, (Dkt. 126), is

**GRANTED**. Defendants' objections, (Dkt. 171), are **OVERRULED**.

The Court certifies the following class pursuant to Federal Rules of Civil Procedure 23(a),

23(b)(3), and 23(c)(1)(B):

> All persons during the Class Period who (i) were residential tenants of apartment
> properties in the State of Texas under written leases where MAA or its predecessor
> in merger, Colonial, served as an owner or landlord, and (ii) were assessed and paid
> an initial rent late fee of $75.00 and/or a daily rent late fee of at least $10.00.

The class period is defined as April 10, 2013, through September 30, 2017.

The Class excludes the following persons: (1) the judge(s) assigned to this case and his or her staff; (2) governmental entities; (3) MAA and Colonial and their affiliates; (4) persons adjudged to be bankrupt during the class period; (5) persons who previously released MAA of the claims raised by this case; and (6) persons who abandoned their MAA apartment units without paying rent or who were evicted by MAA for nonpayment of rent. *See* Mot., Dkt. 126, at 3 n.9.

The Court appoints Plaintiffs Cathi Cleven, Tara Cleven, Areli Arellano, and Joe L. Martinez as class representatives. The Court appoints Britton D. Monts of The Monts Firm, R. Martin Weber, Jr. and Richard E. Norman of Crowley Norman LLP, Jason W. Snell of The Snell Law Firm, and Stacey V. Reese of Stacey V. Reese Law PLLC as class counsel (collectively, "Class Counsel"), finding that they are adequate after considering the factors provided in Rule 23(g). The Court finds that the class representatives and Class Counsel will fairly and adequately represent the interests of the class.

**SIGNED** on September 5, 2018.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE